## JULIA LYNCH *vs.* D. L. SWAN.

Hampden. September 22, 1896. — February 24, 1897.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Landlord and Tenant — Defect in Outside Staircase of Tenement House — Evidence of Negligence — Law and Fact — Action.*

In an action for personal injuries occasioned to the tenant of a building owned by the defendant, by the breaking of one of the steps of an uncovered outside staircase leading from the street into the building and used in common by all the tenants thereof, if there is no evidence that the defendant knew that the step was not strong enough, and the broken step was in evidence before the jury, but is not described in a report of the case to, or produced before, this court, and the plaintiff, who was the only witness that described the step, testifies that it was a big, wide, thick step, that it did not break in the middle, but broke in the two sides where the nails were holding it, it cannot be said, as matter of law, that the judge erred in directing a verdict for the defendant.

TORT, for personal injuries occasioned to the plaintiff by the breaking of one of the steps of an uncovered outside staircase leading from the street into a building owned by the defendant, one tenement in which was occupied by the plaintiff, and the staircase being used in common by all the tenants of the building, it being the only entrance from the street into the house. Trial in the Superior Court, before *Dewey*, J., who, at the close of the evidence, directed the jury to return a verdict for the defendant; and reported the case for the determination of this court. If such direction was right, judgment was to be entered for the defendant; otherwise, the verdict was to be set aside and a new trial ordered. The facts appear in the opinion.

*T. A. Fitzgibbon,* for the plaintiff.

*W. S. Robinson,* for the defendant.

FIELD, C. J. There was evidence for the jury that the plaintiff was in the exercise of due care, and some evidence from which the jury might find that it was the defendant's duty towards her to take reasonable care that the steps should be kept in such a condition that they would not give way when the plaintiff used them in a proper manner, as a means of entering or leaving the house. The difficulty is in determining whether

there was evidence that the defendant had failed to exercise such reasonable care. The fact that one of the steps broke under the weight of the plaintiff is some evidence that in fact this step was not strong enough, and the question is whether there was evidence that the defendant knew this or ought to have known it. There is no sufficient evidence that the weakness of the step was so apparent to the plaintiff that she must be held to have assumed the risk. There is no evidence that the defendant knew that the step was not strong enough, and the question of law comes down to this: Was there evidence for the jury that he ought to have known it, or, in other words, would have known it if he had exercised reasonable care?

There was evidence that the steps generally "were worn, and perhaps needed a little fixing." The broken step was in evidence before the jury, but there is no description of it in the report, and it was not produced before us, and we cannot tell what an inspection of it would disclose. The accident occurred on October 1, 1894, and there was evidence that the plaintiff, with her husband and family, began to live in the house on January 20, 1894. There was evidence that some boys, during the summer of 1894, had broken the sheathing on the side of the flight of steps, and had slept underneath them; and that, as we understand the report, the plaintiff was injured more severely by reason of her leg falling upon one of the broken boards of the sheathing when the step broke and let her leg through. There is no evidence of any other change in the condition of the step which broke between January 20, 1894, and the time of the accident, except such as might naturally be expected to occur from use and the lapse of time. The second step from the bottom got loose, and some nails were driven in it; but the accident occurred, not on this step, but on the second step from the top.

The contention of the defendant is, that his duty was " only that of due care to keep the steps in such condition as they were in, or purported to be in, at the time of the letting of the tenement to the plaintiff or her husband," and that he " was not bound to make them better than they were at the time of the letting." This is true, if the steps had been a part of the tenement let over which the landlord retained no control, unless the

condition of the step was such as to constitute a trap which the tenant could not discover by the exercise of reasonable care. *Bowe* v. *Hunking*, 135 Mass. 380. It also has been held that, when the steps remain under the control of the landlord as a passageway to be used in common by the different tenants of a house, the landlord is not bound to change the original construction of the steps and to construct them upon a different plan where the mode of construction is apparent at the time of the letting. *Woods* v. *Naumkeag Steam Cotton Co.* 134 Mass. 357. *Lindsey* v. *Leighton*, 150 Mass. 285. This doctrine sometimes has been held applicable where the condition as to strength or soundness of steps or of a platform used in common by different tenants was well known to the tenant at the time of the letting, and he was content to take the premises as he found them. *Quinn* v. *Perham*, 151 Mass. 162. *Moynihan* v. *Allyn*, 162 Mass. 270. But it is going too far to hold it applicable in all respects to the outer steps of a tenement house which are under the control of the landlord, and are apparently sound and strong at the time of the letting, and are not known to the tenant, but are or ought to be known to the landlord, to be unsound or of insufficient strength. *Lindsey* v. *Leighton, ubi supra. Leydecker* v. *Brintnall*, 158 Mass. 292. *Wilcox* v. *Zane, ante,* 302.

In the present case the presiding justice, who ordered a verdict for the defendant, could better understand the evidence than we can from the report, because he saw the broken step. The plaintiff is the only witness who gives any description of the step. She testified that it was a big, wide step, — a big, thick step, — that it did not break in the middle, but broke in the two sides where the nails were holding it. Again, when asked which side of the step broke, she said, "The left side, — it was on the left side I went up"; that when she stood on the step it went right down. "The two sides went right down, turned just like that [showing] all round, you see. *Q.* What do you mean by two sides? *A.* This side and that side, and turned right in. — *Q.* Did it break in two in the middle? *A.* No, sir; just two sides came right down."

From this it is possible or probable that the tread which gave way did not break across the grain or transversely to the length of the step, but that it split where it was nailed at the end, and

that the two pieces turned in so as to make the opening which the plaintiff's leg went through. We cannot say, as matter of law, that the presiding justice was wrong in directing a verdict for the defendant. It may be that the defect in the step, if there was one, appeared from the step itself, with the other evidence, to be of such a nature that a jury could not properly find that the landlord was negligent in not discovering the defect and repairing the step.          *Judgment on the verdict.*