CHARLES H. O'MALLEY *vs.* TWENTY–FIVE ASSOCIATES.

Worcester.    October 8, 1897. — March 5, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Defective Hoisting Apparatus erected by Landlord for Use of Tenants — Evidence — Due Care — Action.*

In an action for personal injuries occasioned to the plaintiff, while hoisting coal for a tenant of the defendant's building, by the breaking of the hoisting apparatus which was attached to the rear of the building as a part of the original structure by the defendant and intended to be used by all the tenants of the building, evidence that, within a few days after the accident, the defendant put another apparatus in place of the broken one and had ever since maintained it for the use of the tenants, is admissible upon the question of control of the apparatus; and evidence directed to the question whether the defendant made repairs on the building is also admissible. HOLMES, KNOWLTON, & LATHROP, JJ., dissenting.

If a hoisting apparatus is attached to the rear of a building as a part of the original structure by the owner, who retains general control of it, and is intended to be used by all the tenants of the building, and if there is evidence that the apparatus was not suitable, a person who, while hoisting coal for one of the tenants, is injured by the breaking of the apparatus, is entitled, in an action against the owner for his injury, to go to the jury upon the question whether the defendant had exercised due care in maintaining a proper apparatus. HOLMES, KNOWLTON, & LATHROP, JJ., dissenting.

TORT, for personal injuries received by the plaintiff, while hoisting coal by means of a fall and tackle, on real estate owned by the defendant corporation in Clinton. Trial in the Superior Court, before *Hopkins*, J., who allowed a bill of exceptions, in substance as follows.

There was evidence tending to show that there was situate upon land owned in fee by the defendant, on the corner of High

Street and Pond Court in Clinton, a brick block, rectangular in shape, four stories in height in front and five stories in the rear, occupied by tenants in tenements and lodging rooms, and as stores on the ground floor in front.   The ground descended from High Street, which occasioned the difference in the number of stories.   In the rear, extending the full length of the building, there was a terrace supported by a retaining wall, which was surmounted by an iron fence, which terrace was on a level with the lower or basement story, and was concreted and otherwise prepared for use in connection with the tenements in the block.

Upon the rear of the block, and at the north and south ends thereof, were wooden structures overhanging the terrace, and about the width of the terrace ; and between these structures there was a clear open space, extending from the terrace up-wards, without obstructions of any kind, except the bracket and hoisting apparatus hereinafter described.

The wooden structures referred to consisted of a series of enclosed platforms or piazzas connected with the several tene-ments, and accessible only therefrom, except by stairs.   There was a flight of stairs extending from the terrace to the first platform or piazza, and another flight from that platform to the next, and so on to the top story.   These structures were partly enclosed on the sides, but the side toward the open space or well was open.  Each platform or piazza was connected with a tene-ment, designed and used for domestic purposes, a door opening from each platform into the kitchen of each tenement.   There was no connection between the platforms and the front hall, except through the tenements.   Upon the open side of each plat-form, next to the open space or well, was a large wooden box for the storage of coal which went with each tenement, and was pro-vided by the landlord for the use of the tenants.   At the outside corner of the wooden structures, and about on a level with the top of the upper piazza or platform, was erected, as a part of the original structure, a crane or bracket bolted to the corner post, and from the crane or bracket a fall and tackle were suspended in the following manner.   An iron bolt ran through the end of the crane, within a few inches of the extreme end thereof, with an iron eye, circular in shape, from which was suspended by a hook the hoisting apparatus, which consisted of a grooved pulley, of

the open or spoke pattern, about ten or twelve inches in diameter, hung at the centre upon a sheath, semicircular in shape, that covered the upper half of the pulley. The sheath was not solid, but was of the spoke or open pattern like the pulley. This sheath was hung by means of an iron hook, fixed in the top of it upon the crane by means of the eye before described. A rope passed over the pulley, the ends thereof extending to the terrace, one end of the rope being furnished with a hook, and the other end without any fixture.

The plaintiff produced and put in evidence three pieces of metal, one a hook broken off at the shank, another a portion of a wheel with the groove, and a third a part of a sheath going over the wheel, with the end or shank of a hook inserted therein.

There was evidence tending to show that the pieces produced were parts of the fixture which hung upon the bracket at the time of the accident, and which fell in connection therewith, and was broken into numerous pieces; and that the fall and tackle were made of cast iron. The hook was about one half an inch in thickness where it joined the sheath, and tapered therefrom in ordinary hook shape to the end, and it was from one and a half to two inches in width at its widest part. There was evidence tending to show that there was a fragment of the hook missing between the sheath and the end of the hook; that the building was erected by the defendant corporation five years before the accident, and was thereafter in charge and control of a committee of three, consisting of Alfred A. Burditt, Jonathan Smith, and Charles L. French; that Burditt was also treasurer of the corporation, and generally collected the rents; and that Smith and he let tenements.

It appeared in evidence that one Bowers was janitor of the building after it was erected, and that he was succeeded in that position by one Robert Dias a year or two before the accident.

There was also evidence tending to show that the hoisting apparatus had been used continuously when occasion required by the several tenants, and by traders and others in delivering coal, wood, and other merchandise to the several tenements; and that the plaintiff and one Grady, who was with him at the time of the accident, had used the fall and tackle in delivering

coal at these tenements during a period .of several years prior to the accident. It also appeared in evidence that the fall and tackle were open and exposed at all times, being used without request or permission of any kind; and that Smith, in letting a tenement to one Kendall not long before the accident, told him that the fall and tackle were provided for the use of the tenants, and for the hoisting of heavy merchandise up to the several tenements. Kendall further testified that he had seen Dias fixing the waterworks and faucets, and doing general repairs.

On cross-examination, this witness testified that Burditt told the tenants to go to Dias if they wanted anything done. There was also evidence tending to show that Dias repaired the fall and tackle a short time before the accident, by placing a new rope thereon; and that this was done by direction of Burditt.

The evidence concerning the accident tended to show that Dias ordered from one Frazer half a ton of coal to be delivered at his tenement and put into the coal box above referred to; that the plaintiff was in the employ of Frazer, and with one Grady, another employee of Frazer, went to deliver the coal to Dias; that they backed the sleigh in which it was drawn up to the bank wall, and the plaintiff thereupon ascended the stairs to the platform or piazza; that Grady remained in the sleigh, filled the basket with coal, passed it under the iron fence, fastened the rope to the basket, and drew the same up hand over hand until it reached the fifth story, where it was received by the plaintiff, and the coal deposited in the box; that the plaintiff assisted Grady in pulling the coal up by pulling down on the rope; that when the eighth basket had been thus filled and raised above the level of the plaintiff's head, the hoisting apparatus gave way, and the basket, contents, and apparatus fell to the terrace; and that in descending the basket and its contents struck the plaintiff on the top or side of the head, causing the injuries complained of, and fell with the fall and tackle to the terrace, where the metal parts were found broken as above stated.

There was no evidence that the rope broke, or was in any way defective. The basket in which the coal was hoisted was the ordinary coal basket, and would hold from ninety to one hundred and fifteen pounds. This basket had been used and was enlarged by use, and thus made capable of holding a greater amount.

The plaintiff called as an expert one Hosmar, who testified that the pieces of metal produced in evidence were of cast iron; that the hook was of insufficient strength to bear the strain of hoisting perpendicularly one hundred pounds in the manner described; and that cast iron is exceedingly sensitive to shock or jar, and was made brittle by frost.

The plaintiff called witnesses to show that, within a few days after the apparatus fell and was broken, the defendant put another in its place, and has ever since maintained it for the use of the tenants aforesaid.

Counsel for the plaintiff stated that this evidence was offered, not for the purpose of proving negligence, but upon the question of control of the apparatus, and for no other purpose; but the judge excluded the evidence, and the plaintiff excepted.

The plaintiff called as a witness Ida C. Dias, who testified that she was the wife of Robert Dias, the janitor, and lived in the tenement to which the coal was being brought at the time of the accident; that she had seen the hoisting apparatus used more or less frequently, as often as once in three weeks, during the period of six years; and that her husband had been janitor of the block during that time. This witness was asked, "Who made the repairs on the block during the six years?" In reply to an inquiry of the judge as to whether outside repairs were meant, the plaintiff's counsel replied in the affirmative, and stated that he wanted to show that repairs were made under the control of the two janitors, and through one of the two for the last six years. The witness was then asked, "Have you ever known repairs to be made there under the direction of your husband?" The judge excluded the question; and the plaintiff excepted. The witness was then asked, "Have you ever seen any such repairs being made there under the direction of Mr. Smith, Dr. French, Dr. Bowers, or Mr. J. W. Howe?" (It was contended that this was a committee of the defendant.) The judge excluded the question; and the plaintiff excepted. The witness was then asked, "Have you ever seen any repairs made on that building?" In reply to a question by the judge the plaintiff's counsel said, "I mean general repairs upon the exterior of the building, passageways, or stairways." The judge excluded it; and the plaintiff excepted.

The plaintiff offered to show that the defendant from time to time had made general repairs upon the outside and the inside of the building, on such parts thereof, excepting the hoisting apparatus, as were enjoyed in common by the tenants; and called Burditt as a witness, who testified that Smith, French, and himself were a committee having charge of the block; that Dias did most of the work because he was handy to get to, and he also had charge of the repairs; that the defendant employed Dias to put a rope on the fall and tackle a short time prior to the accident, and paid therefor; that the defendant employed Dias to take care of the halls, and do any work it wanted done; that he could do most every kind of a job about the premises; that the defendant had arranged with no other tenant but Dias to make repairs; that he had charge of the halls and front stairway, and removed the snow from the sidewalk in front of the front door; that neither his committee nor himself had done anything about the fall and tackle except to put in the new rope; and that the committee above named was the only committee that had charge of the building. On cross-examination, the witness testified that the upper tenement on the south side was rented to Dias; that there was no agreement with him to make repairs in his tenement, nor with any other tenant; that there was no agreement to repair the falls and tackle, and no reservation with any tenant of any right to repair; that the falls and tackle on the two ends of the building were exactly alike; that the back piazza at the upper story and the stairs up to the piazza were for the exclusive use of Dias; and that the fall and tackle could be used by either of the tenants below.

The witness was then asked the following questions: " Have you or your committee, so far as you know, ever put the repair of that building out of your control?"  " Have you or your committee, while you had charge of that building, done anything to relieve yourself of the repairing of it?"  " What have you done, either yourself or your committee, in the matter of providing for repairs of that building?"  " Have you provided for or arranged with anybody else to make repairs (other than Dias) on the fall and tackle?"

The judge, upon the defendant's objection, excluded the questions; and the plaintiff excepted.

The defendant offered no evidence on the question of liability.

The judge directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions.

The case was argued at the bar in October, 1897, and afterwards was submitted on briefs to all the justices.

*J. W. Corcoran,* for the plaintiff.

*F. P. Goulding,* (*J. Smith* with him,) for the defendant.

FIELD, C. J.   There was evidence for the jury that the hoisting apparatus was put in by the defendant, and was intended to be used by all the tenants of the building, and that it was not in the exclusive control of any one tenant, but was under the general control of the landlord, subject to the use of it by all the tenants.

The exceptions recite : " The plaintiff called witnesses to show that, within a few days after said apparatus fell and was broken, the defendant put another in its place, and has ever since maintained it for the use of the tenants aforesaid.   Counsel for plaintiff stated that this evidence was offered, not for the purpose of proving negligence, but upon the question of control of the apparatus, and for no other purpose ; but the court excluded the evidence, and the plaintiff seasonably excepted."   This evidence should have been admitted for the purpose for which it was offered.   It had some tendency to show that the defendant admitted that it was its duty to maintain a suitable hoisting apparatus for the use of the tenants.   Of the other evidence excluded by the presiding justice, tending to show that the defendant made the outside repairs, some of it at least, we think, should have been admitted for the purpose of showing that the defendant recognized it as its duty to make such repairs, which might have been found to include repairs upon the hoisting apparatus.   *Readman* v. *Conway,* 126 Mass. 374.   *Poor* v. *Sears,* 154 Mass. 539.

This is not a case where it was conclusively shown that the hoisting apparatus was in the exclusive control of the tenant Dias, or of all the tenants of the building.   See *McKeon* v. *Cutter,* 156 Mass. 296.   If the defendant furnished and retained control of this apparatus as a means provided for hoisting merchandise for the use of its tenants, it was its duty to take reasonable care to furnish a suitable apparatus and to keep it in

suitable condition. *Lynch* v. *Swan*, 167 Mass. 510. *Wilcox* v. *Zane*, 167 Mass. 302. *Marwedel* v. *Cook*, 154 Mass. 235. *Learoyd* v. *Godfrey*, 138 Mass. 315.

There was evidence for the jury that the plaintiff, engaged in hoisting coal for Dias, a tenant, was in the exercise of due care; that the apparatus was intended to be used by dealers in coal and their servants for hoisting coal for the use of the tenants; that the weight of the coal hoisted was not unusual or greater than what the hoisting apparatus was intended to bear; that the hook which broke was of insufficient strength, and was made of cast iron, which the jury might have found to be unsuitable material; and that it was too small. It was for the jury to determine on the evidence whether the defendant had or had not exercised due care in furnishing and keeping in repair a proper hoisting apparatus. See *Hayes* v. *Philadelphia & Reading Coal & Iron Co.* 150 Mass. 457. In the opinion of a majority of the court the entry must be, *Exceptions sustained.*

HOLMES, J. Mr. Justice Knowlton, Mr. Justice Lathrop, and myself are unable to agree with the decision of the majority of the court, and we think it best to state the fact and the reasons for our dissent, were it only to prevent the decision from being taken as a precedent for more than it decides. The plaintiff may be held entitled to recover upon either one of two different grounds. He may be held to have rights of his own independent of those of a tenant, and greater, by reason of an invitation supposed to have been extended by the defendant directly to him, or he may be supposed to stand in the tenant's shoes, and it may be said that a tenant would have a right of action if he were hurt as the plaintiff was. It would be premature to assume that either of these grounds has received the sanction of a majority of the court, since neither of them is adopted in terms. We regard both as equally untenable. In the first place, there seems to us to be no invitation to the public or to any part of it. A contrivance of this sort is not like a way or a staircase, and as to them see *Ganley* v. *Hall*, 168 Mass. 513, and cases cited. It is not put up with reference to the public in the least degree, but solely for the convenience of the tenants. If a member of the public should use it, except by the license express or implied of

a tenant, he would be a wrongdoer. If it be conceded that the plaintiff has no other rights than those which he can claim under the tenant, (*Wilcox* v. *Zane*, 167 Mass. 302, 306,) we are of opinion that no breach of duty is disclosed. In exceptional circumstances a landlord may be held liable for a defect in the premises let, on the ground that it was a trap. But the general rule follows the principles of *caveat emptor*. *Moynihan* v. *Allyn*, 162 Mass. 270. *Cutter* v. *Hamlen*, 147 Mass. 471, 475. *Bowe* v. *Hunking*, 135 Mass. 380. There is nothing here to take the case out of the ordinary rule. The premises are let as they are. There is a rope with a hook on the end of it running over a wheel, which may be used in connection with the tenement. It is evident that the hook and rope are not infinite in strength. We think that there is no warranty or undertaking as to when the limit of their endurance will be reached. What happened was simply that a greater strain was put upon the hook than that kind of hook will bear. The whole tackle is of a common and well known sort. A tenant has no right to complain because the landlord did not substitute a stronger one.