## ARTHUR P. HAWES *vs.* INHABITANTS OF MILTON.

Suffolk.   November 15, 1912. — January 29, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Way,* Public: defect.   *Bridge.*   *Municipal Corporations,* Officers and agents.

A town, which is required by statute to maintain the half of the draw of a. bridge that lies within its limits, is not liable under R. L. c. 51, § 18, for an injury to a traveller on the bridge caused by the temporary opening of a trap door on its side of the draw for the purpose of adjusting the sections of the draw after a vessel had passed through it, as such a transitory condition does not constitute a defect in the bridge within the meaning of the highway act.

A competent draw tender employed to operate a draw by a town, upon which the duty is imposed by statute to maintain the draw and employ such a draw tender, acts in the performance of his duties as a public officer and is not an agent of the town, and, if a traveller is injured by the negligence of such draw tender in operating the draw, his only remedy is against the draw tender personally.

TORT under R. L. c. 51, § 18, for injuries to an automobile of the plaintiff sustained on August 15, 1907, at about 7.30 P. M., when the plaintiff was driving the automobile over the Granite Avenue Bridge, which crosses the Neponset River between that part of Boston called Dorchester and the town of Milton, by reason of a trap door on the Milton half of the bridge having been left open, standing at an angle of about forty-five degrees with the surface of the bridge with its higher end about one and a half feet above such surface.   Writ dated July 13, 1908.

In the Superior Court the case was tried before *Lawton,* J. The draw itself was closed at the time of the accident.   The trap door which was left open on the Milton side was from two to three feet wide and had to be opened when the draw was opened in order to allow the part of the draw on the Milton side to be raised.   There was a similar trap door on the Dorchester side, which was closed at the time of the accident.

St. 1865, c. 192, authorized the county commissioners for the county of Norfolk to construct the bridge in question.   Section 3 of that statute is as follows:

"Section 3.   Upon due notice given by said [county] commissioners to the clerk of the towns in which said bridge lies, that said

bridge has been reconstructed and is in substantial repair so that the same is safe and convenient for travel, such towns shall each thenceforth be responsible for the care, maintenance and repair of the portion of said bridge lying on its own side of the same and extending to the centre of the draw, and they shall at their joint expense provide draw-tenders for said draw, and other necessary agents; and said towns shall be jointly liable to raise the draw and afford all necessary and proper accommodation to vessels having occasion to pass the same by day or by night, and shall keep a sufficient light for vessels at said draw; and if any vessels shall be unreasonably delayed or hindered in passing said draw by the negligence of said towns or their agents in discharging the duties enjoined by this act, the owners or masters of such vessels may receive reasonable damages therefor of said towns in an action of tort before any court proper to try the same."

The facts in regard to the happening of the accident are stated in the opinion.

At the close of the evidence the judge ruled that upon all the evidence the plaintiff could not recover, and ordered a verdict for the defendant. The plaintiff excepted to this ruling, and the judge reported the case, with the stipulation that, if the ruling and order of the court were wrong, judgment should be entered for the plaintiff in the sum of $500; otherwise, that judgment should be entered for the defendant.

*W. R. Bigelow*, for the plaintiff.

*G. C. Coit*, for the defendant.

BRALEY, J. The defendant by the St. 1865, c. 192, § 3, was required not only to care for and maintain that portion of the drawbridge extending to the centre of the draw and lying within the limits of the town, but under R. L. c. 51, §§ 1, 18, to keep it in a reasonably safe condition for the use of travellers. If, without deciding, it be assumed that the plaintiff's automobile was being operated lawfully and the question of his due care was for the jury, yet he cannot recover without some proof that the damage to his property was caused by either a defective condition of the bridge which in the exercise of ordinary diligence the defendant should have known of and remedied, or by the negligence of some person for whose acts the town can be held liable. *Lyman* v. *Hampshire*, 140 Mass. 311. *Stoliker* v. *Boston*, 204 Mass. 522.

The facts are not in dispute. The county commissioners constructed the bridge as directed by the Legislature, with a draw in the centre to be operated by a draw tender provided at the joint expense of the defendant and the town of Dorchester, which was required to care for and maintain the other portion of the bridge "lying on its own side." It was further enacted that "said towns shall be jointly liable to raise the draw and afford all necessary and proper accommodation to vessels having occasion to pass by day or by night." The draw equipped with trap doors estimated to have been from two to three feet wide and extending transversely the width of the bridge, opened in two parts which had to be raised and lowered separately.

The exceptions recite that "the opening of the trap doors was a necessary part of the operation of the drawbridge, and there was no evidence of any defect in the bridge or in any of the machinery by which the draw was operated."

In the early evening of the day of the accident the plaintiff was driving in his automobile with the lamps lighted, and slackened speed, as he approached the bridge; but the draw, very shortly before, had been opened to permit the passage of a boat, and through the inadvertence of the draw tender the sections when closed did not properly lock and overlap. To bring them into adjustment it became necessary again to raise and lower each section. The trap doors at each end were accordingly opened, but apparently there was not sufficient time to close the door on the defendant's side before the automobile came by and struck the open trap.

If the aperture caused the highway to be unsafe for the use of vehicles, this condition was of transitory duration, and the opening of the draw for the passage of vessels or for its readjustment immediately after the vessel had passed having been necessary and lawful, a defect within the meaning of the statute for which the town should be held responsible has not been shown. *Butterfield* v. *Boston*, 148 Mass. 544.

The plaintiff must rely therefore on the alleged carelessness of the draw tender. But, if the jury could have found that he was careless because he did not seasonably ascertain whether travellers were approaching or were attempting to pass, the plaintiff does not allege that he was incompetent, and his negligence cannot be

imputed to the town.   If by § 3 it is made responsible in reasonable damages to the owners or masters of vessels " unreasonably delayed or hindered in passing said draw" through his negligence, he is not as to travellers the servant or agent of the defendant, but in the discharge of his duties acts as a public officer, personally answerable for his own misfeasance.   *Nowell* v. *Wright*, 3 Allen, 166.   *Butterfield* v. *Boston*, 148 Mass. 544.   *Moynihan* v. *Todd*, 188 Mass. 301.

*Judgment for the defendant on the verdict.*