OSMOND W. BRALEY, administrator, *vs.* MASSACHUSETTS NORTHEASTERN STREET RAILWAY COMPANY.

SAME *vs.* COUNTY OF ESSEX.

Essex. May 17, 1920. — July 6, 1920.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Way,* Public: defect in bridge. *Municipal Corporations. Street Railway. Evidence,* Competency.

At the trial of two actions of tort under R. L. c. 51, § 17, by an administrator respectively against a street railway company and the county of Essex, for causing the death of the plaintiff's intestate at a draw in Plum Island bridge, there was evidence showing the following facts: The bridge runs east and west and was enclosed on each side by a fence. The mechanism of the draw was such that, as it opened, its side fence came squarely across the roadway and effectually blocked entrance to the draw from the east, the opening for the pas-

sage of vessels thus being made west of the draw. It took from twelve to fifteen seconds to open the draw, and, during the process, there was an opening, gradually decreasing, from the bridge on the east to the draw. There was a gate fifty feet westerly from the draw, used to block approach from that direction while the draw was open. There had been a gate forty feet easterly of the draw, used for the same purpose, but it had been out of use for ten years and was fastened to the side fence by wire. The draw tender, an employee of the county, saw the plaintiff's intestate approaching from the east on a motorcycle at a rate of about forty miles an hour when the draw was about half open, his speed gradually decreasing as he approached. The draw tender tried to stop the further opening of the draw to give the intestate "the benefit of the length of the draw." The intestate ran upon the draw, struck a pole at the westerly end and was thrown and drowned. By statute and contract the defendant street railway company was required to keep the bridge in repair. *Held,* that

(1) There was no evidence that the bridge was defective;

(2) The county of Essex could not be held liable for negligence of the draw tender;

(3) The street railway company was not liable for the negligence of the draw tender, an employee of the county of Essex.

At the trial above described, evidence was not admissible to prove that, after the plaintiff's intestate was killed, the defendant street railway company erected new gates at both ends of the draw.

TWO ACTIONS OF TORT under R. L. c. 51, §§ 17, 18, for damages resulting from conscious suffering and the death of Harold L. Braley, alleged to have been caused by a defect and want of repair in Plum Island bridge. Writs dated May 26, 1917.

In the Superior Court the actions were tried together before *Lawton,* J. Material evidence is described in the opinion. At the close of the evidence, by order of the judge, the jury found for the defendant in each action; and the plaintiff alleged exceptions.

The cases were submitted on briefs.

*F. H. Magison,* for the plaintiff.

*J. J. Ryan & J. P. Cleary,* for the defendant street railway company.

*N. N. Jones & P. I. Lawton,* for the defendant county of Essex.

CARROLL, J. In these two actions, under R. L. c. 51, §§ 17, 18, the plaintiff seeks to recover damages for the death and conscious suffering of his intestate, Harold L. Braley who, while travelling on a motorcycle, went on to the partly open draw of the Plum Island bridge, and striking a pole at the farther or westerly end, was thrown about twelve feet against the opposite abutment and drowned. There was no evidence that the intestate consciously suffered.

Plum Island bridge was formerly owned and maintained by the Plum Island Turnpike and Bridge Corporation. It was laid out as a public highway by the county commissioners of the county of Essex under St. 1905, c. 404. St. 1915, c. 172, provided that the salary of the draw tender, the installation and repair of apparatus for operating the draw were included in the term "operating," which expense ·was to be borne by the county and by the municipalities specially benefited. By the contract of the bridge corporation and the Plum Island Electric Street Railway Company, referred to in. St. 1905, c. 404, § 2, the bridge corporation had agreed to operate and tend the draw, furnishing the labor and superintendence needed therefor, and the street railway company agreed to keep the bridge in repair. By § 2 of the statute, the county commissioners of Essex County succeeded to "all the rights, powers, privileges, duties and obligations" of the bridge corporation in the contract. The Citizens' Electric Street Railway Company was given the same right to maintain and operate its tracks upon the bridge as the Plum Island Electric Street Railway Company possessed, as long as it performed the duties imposed on that company by the contract. It was agreed that the defendant the Massachusetts Northeastern Street Railway Company succeeded to all the rights and obligations of the Citizens' Electric Street Railway Company under that contract and St. 1905, c. 404, and St. 1915, c. 172.

There was evidence that the accident happened about four o'clock in the afternoon of "a nice day, pleasant weather." The bridge is seven hundred and thirty feet long, enclosed by a rail fence. The draw is about fifty or sixty feet long and about twenty feet wide. As it swings round, when fully open the fence on the side of the draw acts as a barrier to travel from the east, and west of it there is an open space for the passage of boats. On the bridge, about fifty feet westerly of the draw, there is a gate which was closed at the time of the accident; and another about forty feet easterly of the draw which was open. The record does not show when or by whom this gate on the easterly side of the bridge was built; but according to the testimony of the draw tender, who had been employed there for ten years, it had never been used during that period. It had been fastened by wire to the side of the bridge for seven or eight years, "was all

broken to pieces," and in such condition that it could not be used as a barrier.  As the draw turns, one could pass from the unobstructed part of the approach on the east side, but, when fully opened, the fence on the side of the draw extended across the whole width of the way.  On the day of the injury, the draw tender saw the intestate about eighty feet away, approaching from the east, when the draw had been opened about half the width of the roadway leaving part of it unprotected.  He testified that the intestate was riding at the rate of forty miles an hour but the speed lessened as he reached the draw; that "it takes twelve to fifteen seconds to open it;" that he tried to stop the further opening of the draw, giving the intestate "the benefit of the length of the draw," and supposed he could stop the motorcycle in that distance.

In these circumstances it could not be said that the bridge was defective.  When the draw was open, the fence on its side was itself a barrier to travel from the east; and although the gate forty feet distant from the draw was out of repair and was not in use, the bridge in our opinion was at the time reasonably safe for travel.  The draw could be fully opened in from twelve to fifteen seconds, and during this operation travel on a part of the bridge was barred.  It was only during this very short period of time that it was possible to go upon the draw, and the distance of fifty or sixty feet would have to be travelled before the open space on the westerly side would be reached.  When the opening of the draw was completed, at the expiration of twelve or fifteen seconds, the fence on the draw as fully protected travel as the gate farther east could have done.  Under St. 1905, c. 404, § 6, as amended by St. 1915, c. 172, and the contract referred to, the street railway company was required to keep the bridge in condition reasonably safe for travel.  See *Wilson* v. *Boston,* 117 Mass. 509; *Mack* v. *Boston & Albany Railroad,* 164 Mass. 393.  The fact that the approach to the draw was not fully protected, during the short interval, did not show as matter of law that the bridge was unsafe for travel, reasonably considered.  The exercise of reasonable care and diligence did not require of the defendant street railway company, in order to make the bridge safe for ordinary travel or travel generally, that the gate east of the draw should be closed while the draw was turning and was in the act

of opening; and at this time it was not fairly to be anticipated that a traveller would attempt to pass from the permanent part of the bridge to the moving draw and continue to the westerly end where there was the open space for the passage of vessels.

Even if it could be found that the draw tender was negligent, which we do not mean to intimate, the county of Essex was not liable for his neglect.   *Butterfield* v. *Boston*, 148 Mass. 544. *Hawes* v. *Milton*, 213 Mass. 446.   And the Massachusetts Northeastern Street Railway Company could not be held for the negligence of a servant in the employment of the county of Essex.

The plaintiff offered evidence to show that, after his intestate was injured, the defendant street railway company erected new gates at both ends of the draw.   Under the contract and St. 1905, c. 404, repairs were to be made in the first instance by the street railway company, and the company continued liable to perform this obligation until the work, by reason of its failure, was undertaken by the county of Essex.   Under § 7 of the statute, if the street railway company failed to make repairs, the county of Essex could undertake that work.   The evidence offered was not admissible to show negligence of the party responsible for the condition of the bridge.   *Downey* v. *Sawyer*, 157 Mass. 418, 421, and cases cited.   By the statutes and the contract referred to, that responsibility rested on the street railway company, and it was agreed that the defendant street railway company assumed all the duties of the Plum Island Street Railway Company in the care of the structure.   In these circumstances, the evidence offered was not admissible under the rule established in *O'Malley* v. *Twenty-five Associates*, 170 Mass. 471, and similar cases where the fact that repairs were made after an accident was held to be admissible as an admission by the party making them that he recognized this duty belonged to him.

As there was no evidence of the defendant's negligence it is unnecessary to consider whether the plaintiff's intestate was in the exercise of due care.

*Exceptions overruled.*