JAMES O'MEARA *vs.* SAMUEL G. ADAMS & others.

Suffolk. December 13, 1932, June 26, 1933. — June 28, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Negligence,* In hoisting, Assumption of risk. *Evidence,* Matter of conjecture.

At the trial of an action of tort under G. L. (Ter. Ed.) c. 152, §§ 15, 18, for personal injuries sustained when the plaintiff, while assisting a fellow employee of a teamster, who was under subcontract to transport wool to a warehouse of the defendant, was struck by a bag of wool which fell from a wagon driven by the fellow employee after the fellow employee, preparatory to arranging a sling about it for hoisting it, had given a signal to a "whipman" employed by the defendant to take up the slack in the sling and the slack had been taken up, a verdict was ordered for the defendant, and upon exceptions by the plaintiff, it was *held,* that

(1) A finding was required by the evidence that the plaintiff was an expert in the trucking of wool, and as such expert knew that injury such as that which he suffered was an incidental risk of his employment which he assumed;

(2) Furthermore, upon the evidence, the question, whether the falling of the bag was due to negligence of the defendant's whipman or of the plaintiff's fellow employee, was left to conjecture;

(3) The verdict properly was ordered.

TORT. Writ dated March 17, 1931.

In the Superior Court, the action was tried before *Donnelly*, J. Material evidence is described in the opinion. The judge ordered a verdict for the defendants. The plaintiff alleged exceptions.

*J. E. Hannigan*, (*M. Rosenthal* with him,) for the plaintiff.

*F. J. Carney*, (*W. J. Killion* with him,) for the defendants.

PIERCE, J. This is an action of tort brought under G. L. (Ter. Ed.) c. 152, §§ 15, 18, to recover damages for personal injuries sustained on June 29, 1929, by James O'Meara through alleged negligence of the defendants on premises controlled by the defendants.

On June 29, 1929, O'Meara was employed by the R. S. Brine Transportation Company, a subcontractor of Hoyt and Parker. The contractor and subcontractor were corporations engaged in teaming and trucking. The American Mutual Liability Insurance Company as insurer of the R. S. Brine Transportation Company paid compensation to O'Meara for such injuries and under G. L. (Ter. Ed.) c. 152, § 15, brought this action in the name of O'Meara to enforce the alleged liability of the defendants who are copartners and do business as wool merchants, under the name of Adams and Leland, at certain warehouses on Summer and A streets, South Boston. At the time of the accident to O'Meara they were insured under the workmen's compensation act by the Liberty Mutual Insurance Company·which was authorized to do business in this Commonwealth. In every warehouse they posted written notices prepared by the insurance company, signed by Adams and Leland, "that they are insured under the workmen's compensation act." O'Meara had not made any reservation of his common law rights. He claimed and received compensation under the workmen's compensation act from the American Mutual Liability Insurance Company, the insurer of his employer, R. S. Brine Transportation Company. At the

close of the evidence the defendants moved for a directed verdict in their favor and assigned as reasons therefor: "1. Upon all the evidence the plaintiff is not entitled to recover. 2. There is no evidence of negligence on the part of the defendants. 3. The plaintiff was not in the exercise of due care. 4. Under G. L. c. 152, the plaintiff has failed to make out a case. 5. The plaintiff cannot maintain an action under G. L. c. 152, § 15, under the circumstances here disclosed, unless he brings himself within the exception mentioned in G. L. c. 152, § 18, and no evidence has been introduced which, as matter of law, brings the plaintiff within said exception." "The court granted this motion upon the first, fourth and fifth grounds, subject to the plaintiff's exception." The case is before this court on the plaintiff's exceptions to the allowance of the motion for a directed verdict, the reasons assigned therefor being immaterial, *White* v. *E. T. Slattery Co.* 236 Mass. 28, 35, 36; to the refusal of the judge to strike out certain testimony; and to the exclusion of certain evidence.

The material facts shown by the record are in substance as follows: The defendants handled domestic and foreign wools, some of which were purchased by and some consigned to them. All the wool was shipped f. o. b. at the shipping point and came by rail or boat to Boston. The defendants had no means of transporting their wool from the terminals to their warehouses, nor any means of trucking it from warehouse to warehouse where grading was to be performed, although some dealers in wool had such facilities. They dealt principally in grease wool which was shipped in bags "varying in size and weight, running from four hundred to five hundred pounds, about six feet long and two feet in width." A bag contained forty to fifty fleeces, each weighing five to ten pounds and each tied up separately. On June 28, 1929, the defendants received a large shipment of wool from Idaho. They gave orders to Hoyt and Parker, an established trucking concern which had hauled wool for the defendants for a long time under "a uniform price," to transport the wool from yard number 5 of the New Haven Railroad to the warehouse of the defendants on A Street,

South Boston. Hoyt and Parker arranged with R. S. Brine Transportation Company to do part of this work. Under these agreements it was the duty of Hoyt and Parker and of the R. S. Brine Transportation Company not only to transport the wool from the terminal railroad station, but through their employees to assist the defendants' employees in hoisting the wool into the defendants' warehouses. Hoyt and Parker were paid by the defendants, who had nothing to do with the paying of the R. S. Brine Transportation Company.

All wool transported to any of the defendants' warehouses was hoisted directly from the truck or team to the desired floor of the warehouse by means of a suspended cable which comes through the top of the building, over a big pulley, and is operated by an electrically driven hoisting and lowering device called a whip. The whip is controlled by one of the defendants' servants, who stands with his right hand on it at the opening of the floor onto which the wool is to come or from which it is to go. When a truck or team is to be unloaded, the cable, with a hook attached, is lowered by the defendants' employee to the driver of the truck to be unloaded which has been placed directly under the cable. When this is lowered the hook carries down two slings, made of strong rope, slightly longer than the circumference of a bag of wool, with a small loop at each end. The hook in use is passed through both loops of the sling and secures the sling when passed around the bag by the driver. After the wagon rope is loosened one of these slings is placed under the end of a bag by the teamster, who decides where it is to be placed; if placed too near the end the bag will fall when the cable is hoisted. After placing the first sling ordinarily the teamster signals to the whipman to take a "strain," which means to "pull a little to take the slack of the rope to see if it will hold." If the teamster cannot get the sling underneath the bag far enough from the end to carry it up safely, he signals to raise the cable slightly, to "take a strain," and when one end of the bag has been slightly elevated he places the other sling nearer its center and then directs the whipman

to lower the bag. When this is done the driver unfastens the first sling and fastens it to the second sling, and directs the whipman to elevate the bag of wool, saying, "Let her go, take her up." "Go ahead." The operator stands close to the whip at the opening of the floor above the load looking down at the movements of the teamster.

The course of business above related was followed up to a time immediately preceding the accident to O'Meara, then a team driven by one Pelham, an employee of the R. S. Brine Transportation Company, was backed up under the hoisting apparatus preparatory to the discharge of its load. O'Meara, who was the driver of the second load and in the employ of the transportation company, in the performance of his duty left his team and went into the defendants' yard to aid his fellow employee, one Pelham, in unloading his (Pelham's) truck. Pelham was on top of the load above O'Meara's head where he could not be seen by O'Meara. Pelham unfastened the rope that bound the load of his team, from the inside, while O'Meara untied it on the forward part of the right hand side. Pelham threw the rope which was forty to fifty feet long to O'Meara, who turned his back to the wagon and to the cable and started to walk away toward the street, rolling up the rope, when something struck him. Meanwhile, the defendants' whipman, who was at the third floor opening looking at Pelham and O'Meara, lowered the cable with the two slings on the hook. Pelham testified in substance as follows: He stood on the second bag with his right foot on the fourth bag. He had the two slings, and got hold of the mouth of the third bag with his left hand. He had a hook in his right hand. He pulled and "kind of lift the bag," resting it on his leg just enough, probably a foot above the top of the second and fourth bag of the third tier. He put the sling under the bag and let go, and it settled back to the place where he pulled it up. He got the hook from the sling and put the left hand loop of the sling on first, then he took the right hand rope of the same sling and put it on the hook. Meantime, he was standing on the fourth bag ready when the bag would be high enough

to put the hook in both slings. The cable was about eight or ten feet above his head where he was standing. Some people take a strain at two feet, some at a foot, some at six inches. He saw the man on the whip and said, "Take a strain." The purpose of the strain is to tighten up a cable, in the meantime taking a lift, so the teamster can get any one of the slings under the bag. In this instance the man at the whip lowered the cable, Pelham put on the first sling, and said, "Take a strain." He took a strain and the bag went over into the area. "It was too much of a strain and it threw over." He did not see O'Meara at that time and did not know the bag hit him. The witness was too near the wall, because he started to pull or back into the wall. He went over to see where the bag went, and there was O'Meara on the ground. The bag was ahead of O'Meara facing out between A Street and O'Meara, who was about five feet from the wagon.

A witness for the plaintiff testified as follows: The purpose of the two slings is that, when taking up one bag it gives the teamster a chance to put on one sling — if he can't get it under far enough he generally puts one on and tells the whipman to take a strain and he puts the next sling back a little, then he unhooks the first one and puts in the second one; sometimes they do not have to do that, they can get the rope far enough back so they can hook it; sometimes they cannot get it back far enough; the first bag that they take out of the load it is pretty hard to get a sling in far enough to take it up and many times, if they stick, they take a strain and put it farther in; if instead of straining the whip is given an impetus to draw the bag up as if it were going to be hauled up, the result in that case where the sling is only on one end (as here), if it is taken up quickly, is that it is apt to throw the bag out on to the street, on to the ground if the mouth (as it was here) is toward you, but if it is opposite you it is apt to send it toward the building.

The evidence required a finding that O'Meara was an expert in the trucking of wool, and as such expert knew how wool trucks were loaded and how such trucks were unloaded by servants of the owners of the wool in collabo-

ration with servants of hired transportation truckmen. He described the hoisting device which was in use at Adams and Leland's place and stated that he had delivered wool there before, had seen the whip (cable) at work there; "that at other places he had seen the whip at work because it is the usual and customary way of lifting the bags off the trucks." He described with great particularity the way the whip works and the duties of the operator of the whip when called to act by the teamster. On the evidence it is obvious he knew that one of the incidental risks of unloading the bags was that the cable might be raised with an impetus which would probably cast a bag of the wool from a single sling if that sling were placed too near the mouth of the bag, and that slipping out the bag would fall into the area either to the left or to the right of the truck, the place depending on the position of the bag on the load. It is plain on O'Meara's testimony that he had full knowledge of the dangers attendant upon the operation of the whip and assumed the usual risks of injury therefrom. Moreover, on the evidence most favorable to the plaintiff, it cannot reasonably be found that the slipping of the bag from the sling was not due entirely to the act of Pelham in not putting the sling in far enough, rather than due to the strain put upon the whip by the whipman; in a word the cause of the casting out of the bag rests in conjecture. *Trim* v. *Fore River Ship Building Co.* 211 Mass. 593, 595. It follows that the plaintiff has not sustained the burden of proving that the whip was so negligently operated as to cause the bag to fall and strike the plaintiff.

*Exceptions overruled.*