*Municipal Court of the City of Boston*

No. 39677

**J. J. MINNEHAN, INC.**

**v.**

**NATIONAL DOCK &**
**STORAGE WAREHOUSE CO.**

(May 24—September 25, 1963)

*Present*: Gillen, J. (Presiding), Roberts & Canavan, JJ.

Case tried to *Adlow, C. J.*

*Gillen, J.* This is an action of tort to recover for property damage to two of its motor vehicles damaged in two separate unrelated accidents. The defendant's answer contains: (1) general denial (2) contributory negligence (3) voluntary assumption of the risk.

*At the trial there was evidence tending to show that* on or about August 15, 1959, the plaintiff owned a Fruehauf closed trailor, which was driven to the defendant's public warehousing facilities by the plaintiff's employee for the purpose of picking up bales of cotton stored at the warehouse and delivering them to one of the plaintiff's customers. When the plaintiff's employee reached the defendant's premises, he presented a slip authorizing him to withdraw fifty bales of

cotton at the defendant's office. One of the defendant's employees informed him that the cotton was stored in building #83. He then drove the trailor to building #83 where an employee of the defendant met him. The plaintiff's employee, one Conway, was then informed which bay of building #83 contained the desired cotton bales. Conway then backed the trailor truck up so that the extreme rear portion of the trailor was under the third floor doorway of building #83 from which the cotton bales were to be removed. Forty nine more additional bales were then lowered in the same manner as the first bale without incident. The defendant's employees then sent down a fifty-first bale on the hooks. Conway informed them they had sent down one bale too many as he was only to pick up a total of fifty bales. Conway did not touch bale #51. He told the defendant's employees to hoist it back up to the warehouse and then got off the rear of the trailor and started to walk out into the yard beside where his truck was parked, when he heard the words, "look out, the bale is falling" and he turned and saw the bale as it struck the rear end of the trailer at the rear door causing $333.73 damage to the trailer.

On August 27, 1959, the plaintiff's same employee, one Conway, drove a second Fruehauf trailer owned by the plaintiff to the defendant's warehouse for the purpose of picking up bales of cotton stored at the warehouse and delivering them to one of the plaintiff's

customers. One of the defendant's employees informed him that the desired bales were stored in building ♯86. Conway drove the plaintiff's trailer to building ♯86 and backed the trailer up so that the trailer was parallel to the building and a few feet out from it and the extreme rear end of the trailer was in line with the third floor door from which the desired bales were to be removed. An employee of the defendant was present with a portable motor hoist and several employees of the defendant were in the open third floor doorway from which the bales were to be removed. The first bale was removed by the same procedure previously described. When Conway hooked the first bale and pulled it into the interior of the closed solid roofed Fruehauf trailer, the motor hoist operator lowered the bale to the trailer floor. Conway removed the hooks from the bale and looked at them. In his opinion, the hooks were too dull to bite into the bales and hold them properly. He did not complain about the hooks to the defendant's hoist operator or any other person but sent them back up to be used on the remaining bales. Four more bales were lowered and taken into the plaintiff's trailer without incident. While the sixth bale was being lowered from the warehouse, Conway was in the interior of the closed trailer and could not see it or the hoist operator. He heard a holler and then felt an impact as the bale struck the extreme rear roof of the trailer

above its rear door, causing $444.51 damage to the trailer.

In August of 1959, the defendant employed a motor mechanic who constantly supervised Employees of the defendant moved the bales from the interior of the third floor to the open doorway. Another employee of the defendant, one Guidicianiai then moved a portable motor hoist into a position 30-35′ out from building #83 and in line with the open third floor doorway. Both ends of a cable which ran through a loop or pulley fastened to the roof of the building were dropped from the second floor of the building to the motor hoist operator. He fastened one end of the cable to the motor hoist and removed a pair of hooks similar to ice tongs from a compartment in the motor hoist. He inspected the hooks and formed the opinion that they were sharp and in good operating condition. He then fastened the hooks to the other end of the cable and operated the motor hoist so as to raise the hooks to the third floor open doorway of building #83. Other employees of the defendant were standing in the doorway. They opened the hooks and attached them to each side of the first bale in the manner that an iceman attaches ice tongs to each side of a large cake of ice. The hoist operator reeled in the cable so as to raise the bale six inches off the third floor in order to permit his co-employee in the third floor doorway to determine that the bale was secure. Then the employees signaled him to

swing the bale out of the building and lower it to the truck which he did. Conway, the truck driver, reached out with a hook and pulled the bale suspended on the cable into the plaintiff's trailor and it was lowered to the floor of the trailor. At this time, Conway had been a truck driver for 25 years and has regularly deposited and picked up bales of cotton and other materials for 5-10 years. He was thoroughly familiar with all of the above outlined steps and procedures in recovering bales from a warehouse by using hooks and a motor hoist. He considered this a very dangerous procedure. He has seen men badly injured and equipment damaged when bales fell while being lowered in hooks. He testified that anyone who placed himself underneath a location where bales were being lowered "took his life in his hands" and that in August 15, 1959, he knew lowering bales was a very dangerous procedure. Conway released the hooks from the first bale and looked at them. In his opinion, the hooks were too dull to bite into the bales and hold them properly. He did not complain about the hooks to the hoist operator or anyone else. He did not move the trailor from under the edge of the third floor doorway. He signaled the hoist operator to hoist the hooks back up to get the remainder of the fifty bales. and inspected all its hoisting apparatus. Four times each year, all the hooks that needed sharpening were sent to an outside firm and sharpened. After both accidents, the defend-

ant's general manager inspected the hooks which had been used and based on his 25 year's experience in the warehousing business handling similar hooks, formed the opinion that they were in proper operating condition and were in a properly sharpened condition.

Although the two accidents involved the same parties, they did not arise out of the same cause of action. However, the parties raised no objections to the misjoinder.

The defendant duly filed the following requests for rulings of law:

1. A finding is required by the evidence that the plaintiff corporation, acting through its agents, servants and employees, was expert in the trucking of wool and knew that the injury which it suffered was an incidental risk of its employment, which risk is assumed.

2. The plaintiff corporation ansumed the risk of the injury and damage set forth in its declaration.

3. When the plaintiff enters voluntarily into a relation or situation involving obvious danger, he may be taken to assume the risk of said danger and to relieve the defendant of responsibility. Prosser on Tort, 2d ed. §55 at page 303.

4. When the plaintiff, with knowledge of the risk, enters voluntarily into some relation with the defendant which necessarily involves it, he is regarded to have tacitly or impliedly ansumed the risk of being injured. Prosser on Tort, 2d ed. §55 at page 303.

5. The plaintiff was not in the exercise of due

care at the time of the accidents set forth in its declaration.

6. If an agent, servant or employee of the plaintiff, within the scope of his employment, by his conduct assumed the risk of injury or damage to property of the plaintiff, the plaintiff is barred from recovery.

The court made the following rulings on the defendant's requests for rulings:

1. No. 2. No. 3. Immaterial to issues raised by the pleadings. 4. See ♯3. 5. No. 6. Do not find that plaintiff or its agents at any time assumed any risks.

The court found for the plaintiff in the sum of $777.94.

The defendant claims to be aggrieved by the denial of its requests for rulings numbered 1, 2, 3, 4, 5 and 6 and claims to be aggrieved by the finding for the plaintiff.

The trial judge found that the damage was caused by the negligence of the defendant. The equipment used for loading the bales of cotton was entirely within the control of the defendant, its agents or servants. The hooks used by the defendant's employees in the hoisting and lowering operation could have been found to be defective. There was evidence that they were not sharp enough to bite into the bales and hold them properly.

The plaintiff was to get fifty bales on the August 15, 1959 loading. Through error the employees of the defendant sent down a fifty-first bale that fell and did the damage. The

employee of the plaintiff had no contact with the fifty-first bale.

A few days later the same employee of the plaintiff went back with a second trailer to the same warehouse. An employee of the defendant informed him that the desired bales were stored in building #86. As on the previous occasion the plaintiff's employee was in the truck and pulled the bales into the trailer when they were deposited on the floor of the trailer by the defendant's employee. The plaintiff's employee on this occasion saw that the hooks were not sharp enough to grip the bales properly. When the sixth bale was lowered it fell off the hooks and landed on the trailer and damaged it.

The defendant sets up the claim of assumption of the risk here on the part of the plaintiff's employee and stresses the case of *O'Meara v. Adams,* 283 Mass. 396, as authority for the proposition. But an examination of this case discloses that the court held that there was no evidence of negligence on the part of the defendant and the decision turned on this point. While in passing the court made reference to "assumption of risk", it was in the nature of dicta and the final decision was reached when the court held there was no defendant negligence.

The defendant in the instant case loses sight of the fact that *O'Meara v. Adams,* supra, on which it relies is an action under G. L. (Ter. Ed.) c. 152 (Workmen's Com-

pensation) and has no bearing on the instant case.

Here the plaintiff employee had the right to expect that the work would be done properly by the defendant as all the apparatus was in its control. He was not bound to anticipate negligence on the part of the defendant.

The trial judge obviously found that the operator of the defendant's apparatus failed and neglected to maintain sufficient guard and vigilance over the hoisting apparatus in consequence of which the bales were permitted to be dropped. See *O'Mally v. Twenty-Five Associates,* 170 Mass. 471.

We find no error. The order is " report dismissed".

S. Roy Remar, of Boston, for the Plaintiff.

George A. McLaughlin, Jr., of Boston, for the Defendant.