## DAVID R. LEYDECKER *vs.* NORMAN Y. BRINTNALL.

Suffolk.    January 17, 1893. — March 2, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Personal Injuries — Landlord and Tenant — Covenant — Neglect to keep Approaches in Repair — Ignorance of Landlord — Instructions to Jury.*

A lessee's covenant to save the lessor harmless " from any claim or damage arising from neglect in not removing snow and ice from the roof of the building, or from the sidewalks bordering from the premises so leased," does not have the effect to give to the lessee the sole occupancy of the sidewalk in front of the lessor's building, or bind him to keep the same in general repair; and the rule of law as to a landlord's responsibility for defects in the approach to a stairway used by several tenants is applicable.

In an action for personal injuries occasioned to the plaintiff by falling on one of the approaches to a building leased by the defendant, the latter's request for an instruction, that the mere fact that he retained the use of one or two rooms in the building did not conclusively determine that he had control of the approaches, was held to be rightly refused.

An owner of land bounding on a street cannot escape liability for neglect to keep in proper repair the approaches to his tenement, which is let to tenants, by saying that he did not know where his boundary line was, or that he did not know that the approaches were out of repair.

The proper time to present requests for instructions is before the charge, and not after, unless there are circumstances making it necessary to call attention to some matter of detail or some phase of the case which has been overlooked or inaccurately dealt with.

TORT, for personal injuries. At the trial in the Superior Court, before *Bishop*, J., there was evidence tending to show that the defendant, who was a livery stable keeper, owned two estates and buildings, Nos. 35 and 37 on Chapman Street in Boston. There was a passageway three or four feet wide between these two buildings, which was used solely as an entrance from the street to the rooms above the ground floor of the building numbered 35. There was a stairway leading from a point within the passageway about three inches from the street within the defendant's line on one side of the passageway, and about eighteen inches on the other side. The triangular space thus formed was bricked over on the same level with the sidewalk in front of the building, without any line of demarcation between the same and the sidewalk, but was within the defendant's line of ownership as shown by his deed. The lines of his deed ran to Chapman Street, and the legal line of Chapman Street included part of the defendant's buildings, but did not include this space in question. The stairway led to the second story of the building numbered 35, ending there with a landing and doorway. The sidewalk in front of the building was brick, and the triangular space between the street line and the first step of the stairway was also brick. The injury was alleged to have been caused by a defect or want of repair in the bricked paving in the triangular space near the first step of the stairway. There were two water conductors, one on each side of the space attached to each of the buildings owned by the defendant, which conducted the water from the roofs of the buildings to the ground, one of which discharged water upon the bricked triangular space, and the other upon the sidewalk within a foot of the space.

The stairway which led from the passageway to the second story ended there at a landing and doorway. A hall led from this doorway, at right angles, across the buildings, and the stairs leading to the third and fourth floors started from the farther end of the hall on the inside of the building. From this hall a door opened into the front office leased by Wheeler, hereinafter referred to, on one side, and on the other side of the entry a door opened into two large rooms which were occupied or controlled by the defendant. These, with the front office and entry, comprised all of the second floor.

The defendant leased to one Wheeler the front office on the second floor of the building No. 35, with the third and fourth floors entire, and the lease contained the provision that the lessee covenanted to save the lessor harmless from any claim or damage arising from neglect in not removing snow and ice from the roof of the building, or from the sidewalks bordering from the premises so leased. The premises leased included all the rooms reached by the stairway and hall, except the two rooms occupied and used by the defendant as above stated. These two rooms were a harness-room and hay loft on the second floor, and were reached by the stairway and hall above referred to, and there was also access to them directly from the defendant's stable, which included the ground floor of both buildings, by means of a hanging step ladder, between the part of the premises where the horses were in the rear of No. 35 and the hay loft above it, which step ladder could not be reached from Chapman Street except by going through the defendant's adjoining building No. 37. The main entrance to the stable was on Chapman Street in building No. 37, and was within eight to ten feet of the passageway and stairway in question, and there was no direct connection between the ground floor of the stable and the stairway and triangular space. The defendant's lessee, Wheeler, sublet one of the rooms to tenants, and occupied the rest of the premises himself. The plaintiff was one of Wheeler's employees, and had occasion to use the outside stairway and passageway in entering and leaving his place of employment. The evidence of the plaintiff tended to show that, at noon on September 25, 1888, the plaintiff, in the performance of his duties and in the exercise of due care, was descending the outside stairway to the passageway and street, and that as he stepped from the lower step of the stairway upon the passageway the bricks in the passageway within fifteen inches of the stairway and within the triangular space sank under him, whereby he was thrown down and his leg was broken. The plaintiff testified that at the foot of the stairway he had noticed from time to time, for two or three weeks, a depression in the bricks at the triangular space. There was no evidence that the defendant had actual knowledge of the defect in question, unless it could be inferred from the facts and circumstances stated herein. There was evidence that

in times of rain surface water had been noticed by the plaintiff and others in the place where the depression existed in the triangular space, and that the position of the water conductors was such that water discharged in times of rain from the conductors would flow and remain upon the depressed area at the foot of the stairway. There was a conflict of testimony on the question of the use of the stairway and entry by the defendant's employees to reach the harness-room and hay loft on the second floor of the building. There was evidence that the defendant allowed a certain house painter to use the harness-room or hay loft in question for a few days to paint some blinds, and that the painter's men used the passageway, entry, and stairway in question in entering and leaving the hay loft. There was evidence also that employees of the defendant in his stable, and his stable foreman, went up and down the passageway and stairway to the harness-room and loft, and that the defendant's foreman used the passageway and stairway sometimes every day, sometimes several times a week, as he had occasion to do so in the defendant's business; and that the defendant kept in his desk in his stable office a key to the outside door at the head of the stairway, which his foreman and employees could use when the door was locked; and that after the accident one of the defendant's employees placed a plank or board at the foot of said stairway over the place where the bricks had caved in. One Stone, a carpenter, called by the defendant, testified that he had been employed by Wheeler to board up the space at the top of the outer stairs four or five feet high, also to put a hand rail on the stairs, and that also in 1889 he was employed by Wheeler to put in a stairway from the second to the third floor in the outside passageway. On cross-examination, he said these were additions to the place. The defendant testified that, although the harness-room and hay loft could be reached by the outside stairway in question, in fact they were used in connection with his stable on the lower floor, and were reached by the hanging step ladder leading directly from the stable to the hay loft. He also testified that he had no key to the only door opening from said outside stairway; that Wheeler, his tenant, had the key to said door. The defendant stated that he did not know that the triangular space was within his line. The defendant held the

premises by deed, and it appearing that the deed under which he claimed and held the premises included the triangular space, he was asked, for the purpose of showing that he did not know that he owned it, "Did you have any knowledge that the triangular space belonged to you?" The question was objected to, and excluded, and the defendant excepted.

The judge instructed the jury, among other things, as follows:

"Where a portion of an estate is leased to a person, the landlord himself retaining control of all the rest, including the approaches, the landlord is responsible for the condition of the approaches to the building, . . . places over which the tenant or any particular tenant has occasion to pass. So, where different parts of a building are leased to different tenants, with the right in tenants to use in common the approaches, stairs, and passageways which are not let, the landlord is liable to a tenant, or to a stranger rightfully and with due care using such approaches, stairs, and passageways, for injuries caused by defects in their construction or want of repair; and the same principle applies where the owner himself retains portions of the premises in his own possession and under his own control. . . .

"The defendant, I think, testified upon the stand that he did not know of this defect. It is not necessary that he should have known of it in order to be liable for it. If by the exercise of due care concerning these premises and this approach, of which, if the evidence is as the plaintiff claims, he had the charge, — if by the exercise of due care concerning that, he could have learned the condition of the premises, he was bound to know what the condition of the place was. . . .

"The conductors coming down from the house are an element for your consideration in this case. If these conductors, or either of them, were so constructed that at times they emptied water upon the walk where the plaintiff fell, and such water caused the defect, in whole or in part, it is competent for you to consider that fact, it is one of the facts and one of the elements in the case. It is competent for you to consider what results might naturally be expected from that fact upon the question whether the defendant was negligent or not; because the defendant is bound to provide against defects which would naturally and probably arise from any existing state of things."

The defendant presented no requests to the judge before the charge, but after the charge was delivered requested the judge to instruct the jury that the mere fact that the landlord retained the use of one or two rooms in a building leased to a tenant did not conclusively determine that the landlord had control of the approaches. The judge declined then to give this instruction, on the ground that the subject of the defendant's liability had been sufficiently covered by the charge, and that to reopen the subject as to one particular might be to distort the relations of that particular in the minds of the jury. The defendant excepted. The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*A. Hemenway & P. J. Doherty*, for the defendant.

*R. M. Saltonstall & H. E. Bolles*, for the plaintiff.

ALLEN, J. The defendant contends that the triangular space where the accident occurred passed to his lessee, Wheeler, under the lease, as an appurtenance to the premises leased. This point is not now open, it not being shown by the bill of exceptions that it was taken at the trial. There was no ruling upon it by the court. If the point were open, it is impossible to say, as matter of law, that this space passed as an appurtenance under the lease. The lease does not include the stairway nor the approaches thereto. The lessee's covenant to save the lessor harmless " from any claim or damage arising from neglect in not removing snow and ice from the roof of the building, or from the sidewalks bordering from the premises so leased," was one which he had a right to make, if he saw fit to do so; but it could hardly be contended that it had the effect to give to the lessee the sole occupancy of the sidewalk in front of the defendant's stable, or that it bound him to keep the same in general repair. The whole argument resting on the assumption that Wheeler was bound by his lease to keep this space in repair, and that the defendant was exonerated from that duty, fails.

This being so, the general rule of law as to a landlord's responsibility for defects in the approach to a stairway, used by several tenants, is applicable. *Looney* v. *McLean*, 129 Mass. 33. *Watkins* v. *Goodall*, 138 Mass. 533.

The defendant's request for an instruction, that the mere fact that the landlord retained the use of one or two rooms in a building leased to a tenant did not conclusively determine that

the landlord had control of the approaches, was rightly refused. The proper time to present requests for instructions is before the charge, and not after, unless there are circumstances making it necessary to call attention to some matter of detail or some phase of the case which has been overlooked or inaccurately dealt with. There had been nothing in the charge to signify that the mere fact referred to, under all circumstances, would conclusively determine that the landlord had control of the approaches. The statement that " the same principle applies where the owner himself retains portions of the premises in his own possession, and under his own control," obviously refers to what has been said just before, as to different tenants who have the right to use the approaches in common, and could not have been understood to apply to the case of a landlord who retained portions of the premises in his own possession, with no right to use the approaches in common with his tenant or tenants of other portions of the building. There was in this case no dispute that the defendant and his employees had a right to use the stairway and approaches to gain access to the rooms reserved by him on the second floor, if they wished to do so. The only conflict of testimony was as to the extent of the actual use thereof.

Proof of the defendant's ignorance of his true boundary line was properly excluded. As between him and his tenants, he was bound to know. The city was not bound to keep the triangular space in repair. *Damon* v. *Boston*, 149 Mass. 147, and cases cited. An owner of land bounding on a street cannot escape liability for neglect to keep in proper repair the approaches to his tenement, which is let to tenants, by saying that he did not know where his boundary line was. He owed to his tenant and those employed by such tenant the duty not to expose them to a dangerous condition of the place, which reasonable care on his part would have prevented. *Holmes* v. *Drew*, 151 Mass. 578. And this duty is not rendered the less by his ignorance of his true boundary line. *Foley* v. *McCarthy*, 157 Mass. 474. If it was not the defendant's duty to keep this place in proper repair, then it was nobody's duty.

The ruling that it is not necessary that the defendant should have known of the defect, in order to be liable for it, was right. *Lindsey* v. *Leighton*, 150 Mass. 285.

*Exceptions overruled.*