. AXEL HILDEN *vs.* THOMAS NAYLOR.

Middlesex.   January 20, 1916. — March 3, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Landlord and Tenant. Negligence,* Of one controlling real estate.

In an action by the tenant of a store in a building against his landlord, who was the owner of the building and in control of its roof and pipes, for damage to the plaintiff's goods alleged to have been caused by the negligence of the defendant in permitting a pipe or conductor leading from the roof to become leaky and out of repair, where there is evidence that at the time of the letting the roof and the pipe were in good repair, that the defendant retained control of the roof and the pipes leading from it, that a waste pipe leading from the roof directly over the plaintiff's store was overloaded, that the cap and strainer at the entrance of the pipe on the roof were allowed to become and remain detached or raised from

their place so as to permit leaves from neighboring trees to enter the pipe and ob-
struct it until the accumulation of pent up water overflowed into the plaintiff's
shop and damaged his goods, the plaintiff is entitled to go to the jury.

BRALEY, J. The plaintiff sues in tort for damages caused by
the alleged negligence of the defendant, who was his landlord and
the owner of the building, in "suffering the roof and water or drain
pipes to be defectively constructed, leaky and out of repair,"
whereby "the water from the roof and waste pipes ran into the
store," injuring his goods and property. A verdict for the plain-
tiff having been returned, the only question before us on the
record is whether he was entitled to go to the jury.

The exceptions state and the jury could find, "that from the
roof in question there was installed a two-inch iron pipe for carry-
ing water from the roof of said building down through a partition
wall adjacent to the plaintiff's store into the cellar and thence
into a pipe which entered the sewer; that the pipe was not in the
control of the plaintiff nor used by the plaintiff, nor a part of the
premises rented; that subsequently to the letting of the prem-
ises by the defendant to the plaintiff the defendant connected a
sink pipe with the aforesaid waste pipe directly over the plain-
tiff's store; that a wash basin or sink in the barber shop was con-
nected with said drain pipe; that it had been raining during the
night;" and on the following morning when the plaintiff entered
his store the "goods on a table six by thirteen feet, over which
there was a red cover, in the centre of the store, were wet with
water, and that shoe boxes on the side of the wall of said store
were wet, and some ladies' waists which were arranged upon some
hangers between the aforesaid table and where the shoe cases
were located in said store, and that places in the plastering were
wet on the right hand side of the main door where you enter said
store, and that the ceiling above the table was wet and water drip-
ping from said ceiling; that he, with the barber, when the barber
came in the morning and opened the shop, one Oberg and Erickson
went to the room occupied as a barber shop on the second floor
and directly above said store, and found a little water on the floor,
and the barber's bowl connected with the pipe in question was
full of water; that there were some pieces of leaves on the floor and
in the wash bowl; that he afterwards went upon the roof with
Oberg and Erickson through a scuttle where, near the entrance to

the roof, he found the drain pipe in question was located in the valley of the roof; that the valley extended from the point of entrance upon said roof in an opposite direction a distance of about eighteen feet; that a round shaped copper cap, with holes perforated to allow the water to pass down through into the pipe, covered the entrance to said waste pipe in the roof; that the cap was loose except one side, and it was slightly turned up at one edge from an inch to an inch and a half. There were leaves on the roof," and "Oberg and Erickson corroborated the plaintiff on all the foregoing." The plaintiff offered evidence of two witnesses who testified that "a plumber came there, employed by the owner of the building, and removed a piece of the sheathing in the store which covered said pipe, and in boring a hole into the pipe some water spurted out three or four feet; that they put wire up and down the pipe and tested for obstructions; that the aforesaid waste or drain pipe entered the cellar or basement at a sharp angle." The plaintiff further testified that two or three months before the loss a fire having occurred on the second floor in another part of the building, he went to the roof and saw the defendant standing by the pipe in question, "and that the defendant put his foot on the cap and pressed it down." Several witnesses testified to the condition of the stock although they did not know where the water came from, and "that there were trees extending over the roof of the building." It was agreed "that the purpose of the cap over the pipe was to prevent dirt and leaves entering the pipe," and "that the floor in the barber shop from the sink or wash bowl pitched slightly in the direction of the centre of the plaintiff's store," and that a partition directly over the centre of the plaintiff's store separated the barber's shop from an adjoining room. While the evidence introduced in behalf of the defendant strongly tended to show that the roof, cap and waste pipe were in proper repair and not defective, and that there were no trees in such proximity to the building that leaves therefrom might lodge in the gutter and pass into and clog the pipe or the conductor leading from the roof, the credibility of the witnesses was for the jury, and, if they accepted the plaintiff's testimony as a true statement of the conditions of which he complained, this affords no ground for reversal. *Lancaster* v. *Stanetsky*, 221 Mass. 312.

It also was a question of fact whether the defendant retained

control of the roof and waste pipe. *Poor* v. *Sears,* 154 Mass. 539, 548, 549. The entire building had not been let to the plaintiff, and the jury could find, as recited in the exceptions, that "the pipe was not in the control of the plaintiff, nor used by the plaintiff, nor part of the premises rented," and that at the time of letting, the roof and pipe were in good repair. The duty rested on the defendant to maintain them in this condition during the plaintiff's tenancy. *Freeman* v. *Hunnewell,* 163 Mass. 210. *Lydecker* v. *Brintnall,* 158 Mass. 292, 298. And, if through his negligence the waste pipe was overloaded or the cap and strainer were allowed to become and remain so detached or raised from their place in the valley of the gutter as to permit the entrance of leaves causing the pipe to become obstructed until the accumulated and pent up water overflowed the plaintiff's premises, the defendant cannot avoid liability. *Watkins* v. *Goodall,* 138 Mass. 533.

It is to be assumed that appropriate instructions were given. The presiding judge * for the reasons stated properly declined to rule "that upon all the evidence the plaintiff was not entitled to recover."

*Exceptions overruled.*

The case was submitted on briefs.

*T. Hillis,* for the defendant.

*J. A. Anderson,* for the plaintiff.