WILLIAM F. CONROY, administrator, *vs.* BEATRICE J. MAXWELL.

Middlesex.    January 11, 1924. — February 27, 1924.

Present: RUGG, C.J., DECOURCY, CROSBY, PIERCE, & WAIT, JJ.

*Landlord and Tenant,* Liability of landlord for death of tenant caused by defect in piazza railing remaining in control of landlord.

Where, in an action by an administrator against the owner of a two-family house for the causing of the death without conscious suffering of the plaintiff's intestate, the only evidence of the conduct of the intestate just preceding the accident was, in substance, that at about six o'clock in the morning she was heard to go downstairs from an upper apartment in the house where she had been a tenant and to open a door leading to a piazza, that after a few seconds a crash of splintering wood was heard and the plaintiff's intestate was seen lying face down on the ground beside the piazza; that it had been her custom to go down at

that time every morning " to get the milk " and that as she lay on the ground the rail of the piazza was beneath her body. *Held*, that the conduct of the deceased was not fully disclosed by the evidence and that therefore the plaintiff was entitled to the benefit of G. L. c. 231, § 85, and the question of the intestate's due care was for the jury.

At the trial of the action above described, it appeared that the upper and lower tenements in the house had separate front entrances, and separate rear entrances opening from the piazza in question, which was opposite the lower tenement, was ten feet long by three feet wide, and was reached from the yard by steps; that near each end of the piazza was a door leading to one of the tenements; that the piazza was used for no other purpose than as a means of entrance and exit; that there was a gutter along the outer edge of the roof above it and there was a railing around the piazza's outer edge. There was evidence that the piazza for years had been getting more and more out of repair, that this was called to the attention of the defendant, and that the cause of the breaking of the rail was a decayed condition of the posts supporting it. *Held*, that

(1) A finding was warranted that the piazza remained in the control of the defendant and that no part of it was included in the premises let to the plaintiff's intestate;

(2) A finding was warranted that each tenant was entitled to the use of the whole of the piazza for any proper purpose;

(3) The fact that the tenant of the lower flat might not have to use the piazza as much or in the same way as the family of the intestate was not material;

(4) A finding was warranted that the death of the plaintiff's intestate was caused by negligence of the defendant.

TORT for causing the death without conscious suffering of Mary Conroy, the plaintiff's intestate, who, due to the breaking of a defective railing, fell from the back piazza of a two-family house, which was owned by the defendant and the upper apartment of which was rented to the plaintiff's intestate. Writ dated November 1, 1921.

In the Superior Court, the action was tried before *Sisk*, J. Material evidence is described in the opinion. The jury returned a verdict for the plaintiff in the sum of $3,000. Before the verdict was recorded, the trial judge reserved leave, with the consent of the jury, to enter a verdict for the defendant if upon the evidence such verdict ought to have been entered, and reported the action to this court for determination, judgment to be entered for the plaintiff on the verdict if the action properly was submitted to the jury, and otherwise judgment to be entered for the defendant.

*J. C. Reilly*, for the plaintiff.

*D. J. Donahue & J. P. Donahue*, for the defendant, submitted a brief.

CROSBY, J.   This is an action of tort brought to recover for the death of the plaintiff's intestate.   The case is before us on a report of the trial judge after a verdict for the plaintiff.

On September 12, 1921, the date of the accident which resulted in the death of the intestate, the defendant was, and for at least eighteen years before that time had been, the owner of a building situated on the northerly side of Bartlett Street in Lowell.   The building had two tenements; the upstairs one being occupied by the plaintiff's intestate for the seventeen years before her death, and that downstairs by one Fee, both as tenants at will.   Each tenement had a separate front entrance; and there were separate rear entrances which were reached by entering the yard on the easterly side of the building, which yard sloped gradually downward from the level of the street.   An uncovered piazza, ten feet long and three feet wide, extended from the northeast corner of the house along a portion of the easterly end, and was reached from the yard by four or five steps at its south end which was about five feet above the ground; and the northerly end about seven feet above the ground.   Along the north and east sides of the piazza and about three feet above the floor was a railing supported by three posts.   Two doors led from the westerly side of the piazza to the tenements, the southerly door to the one downstairs and the northerly door to that occupied by the deceased.   The southerly door was just north of the southerly end of the piazza, and the northerly door was just south of its northerly end.   The piazza was used for no purpose except as a means of entrance and exit.   A piazza was built into the second story as part of the upstairs tenement, the easterly line of which was parallel with and directly above the westerly line of the piazza downstairs.   A gutter about ten feet long was attached to the eaves at the easterly edge of the roof just above the upper piazza and ran parallel with it to its northerly end.

When the tenancy of the deceased began the downstairs

piazza and the gutter were in good condition; later the piazza showed signs of deterioration; in 1917 it was noticeably dilapidated, and thereafter its condition became worse. There was evidence that within a year before the accident the deceased on several occasions had called the defendant's attention to the condition of the piazza and asked her to repair it, and that the defendant replied that she could not do so " until labor came down; " that on August 15, 1921, the occupant of the lower tenement called the defendant's attention to the poor condition of the piazza; that from some time in the year 1917 until the day of the accident the gutter was loose and hung below its proper position from six to eight inches, leaving an open space between it and the edge of the roof; that on the night of the accident it rained; that about three o'clock in the morning Fee was awakened by a loud crash, and went out to the piazza with a search light and observed that the railing on the north side of the piazza was gone, but that the one on the east side was standing; that he saw a portion of the gutter lying on the ground north of the piazza. He further testified that the night before, the north railing was in place. The " loud crash " referred to by Fee was also heard by one Haggerty who lived in an adjoining house.

Margaret Conroy, a daughter of the deceased who lived with her mother, testified that in the morning of the day of the accident she was awakened by her mother about 5:50 o'clock and that shortly afterwards she heard her mother going down the back stairs which led to the lower piazza; that it was her mother's practice to go down at this time every morning " to get the milk; " that she heard her mother open the northerly door leading on to the piazza, and after a space of about four or five seconds she heard " a crash as of splintering wood; " that she arose from her bed and looking down saw her mother lying face down on the ground to the east of the piazza; that she hurried down the back stairs and then noticed that there were no rails or posts standing on the piazza; that she went down the steps to her mother and found her lying with the easterly rail of the piazza beneath her body; that she was lying directly opposite the

northerly door leading from the piazza. A certified copy of the death certificate was admitted in evidence in which it was stated that the deceased died " as a result of a fracture at the base of her skull caused by a fall from a piazza." There was evidence that a few hours after the accident the wood at the base of the posts of the piazza was found to be in a decayed condition and that the removal of the northerly rail would greatly weaken the easterly rail.

The conduct of the deceased is not fully disclosed by the evidence. She is presumed to have been in the exercise of due care. St. 1914, c. 553, now G. L. c. 231, § 85. That question, therefore, was for the jury. *Mercier* v. *Union Street Railway*, 230 Mass. 397. *Jordan* v. *Adams Gas Light Co.* 231 Mass. 186.

Whether the injuries which the deceased received, and which resulted in her death, could be found to have been due to the defendant's negligence depends upon whether the piazza from which the deceased fell remained in the control of the defendant, and was allowed by her to be in a defective and dangerous condition at the time of the accident. If this piazza was a part of the premises rented to her there is no liability on the part of the defendant. A tenant in the absence of an express warranty or deceit takes the premises in the condition in which he finds them; there is no presumption that they are in good repair, or that they are fit for occupancy. *Conahan* v. *Fisher*, 233 Mass. 234. A tenant cannot recover against his landlord for personal injuries due to a defective condition of the premises let, unless the landlord agrees to repair, or is negligent in making repairs. *Galvin* v. *Beals*, 187 Mass. 250. *Conahan* v. *Fisher, supra,* and cases there collected. *Stumpf* v. *Leland,* 242 Mass. 168. It is also settled that where a landlord retains control over halls, entrances, stairways and passageways used by tenants in connection with demised premises, he owes to the tenants the duty of using reasonable care to keep such stairways, hallways and passageways in the same condition as they were in or appeared to be in at the time of letting. *Andrews* v. *Williamson*, 193 Mass. 92. *Pizzano* v. *Shuman,* 229 Mass. 240, 243. *Conahan* v. *Fisher, supra.*

It could not have been ruled as matter of law that the rear piazza and gutter were a part of the premises let to the intestate; whether such was the fact, or that they remained in the control of the defendant, was a question for the jury. *Poor* v. *Sears,* 154 Mass. 539. *Hilden* v. *Naylor,* 223 Mass. 290, 292, 293. *Standard Tire & Rubber Co.* v. *Richardson & Brothers, Inc.* 231 Mass. 374, 376. Both tenants were obliged to pass over the lower piazza in going to and from the rear entrance to their respective homes. There was no railing or other barrier which divided the piazza and nothing to indicate that the whole of it was not intended for the use of both tenants in common. Although the deceased and the members of her family were required to travel over a greater portion of it in passing between their entrance and the piazza steps than the tenant of the lower floor, that circumstance is not conclusive against the plaintiff's contention that the piazza as a whole was intended by the defendant to be for the common use of both. It could be found that the right of both tenants and the members of their respective families to the use of the piazza was not limited merely to passing back and forth over it, but that each was entitled to use the whole space for any proper purpose. It could have been found as a rational inference that in view of the limited area of this piazza, it was not intended by the defendant that the use by each tenant was restricted to specific parts of it, and only for the purpose of exit and entrance.

The tenant of the lower floor and his wife testified that "in coming and going to and from their tenement by way of the rear piazza, they would use a portion of the railing which had fallen," although the plaintiff on cross-examination testified to the contrary. The fact that the tenant of the lower floor might not have to use it so much or in the same way as the deceased and her family, is not material. *Nash* v. *Webber,* 204 Mass. 419, 425. The jury were warranted in finding that the defendant retained control over it; that the railing was in good condition when the tenancy of the deceased began; that at the time of the accident, seventeen years later, it had become decayed and out of

repair; and that the defendant knew of its condition before the accident. It also could have been found as a reasonable inference from the evidence, that on the night of the accident the gutter and railing on the northerly end, because of their defective condition, fell, thereby causing the easterly railing to be greatly weakened, and that not long afterwards the deceased went out upon the piazza and came in contact with the easterly railing opposite the rear doorway; that because of its defective condition it gave way and she was precipitated to the ground below. *Boutlier* v. *Malden,* 226 Mass. 479, 485. *Jordan* v. *Adams Gas Light Co. supra.* It could have been found as a fair inference from all the evidence that the defendant retained control of the piazza and that the death of the intestate was caused by the negligent failure of the defendant to keep it in repair. *Shipley* v. *Fifty Associates,* 101 Mass. 251. *Wilcox* v. *Zane,* 167 Mass. 302. *Andrews* v. *Williamson, supra. Fitzsimmons* v. *Hale,* 220 Mass. 461. *Sullivan* v. *Northridge,* 246 Mass. 382.

The present case upon its facts is distinguishable from *Conahan* v. *Fisher, supra,* and other cases relied on by the defendant.

As the case was rightly submitted to the jury, the entry, in accordance with the report, must be

*Judgment for the plaintiff on the verdict.*