SAMUEL ROGERS *vs.* DUDLEY REALTY CORPORATION.

Middlesex.　January 3, 1938. — July 18, 1938.

Present: DONAHUE, QUA, DOLAN, & COX, JJ.

*Landlord and Tenant,* Snow and ice, Common roof. *Snow and Ice.*

Without evidence that at the beginning of a tenancy at will icicles would not form at an angle of eaves maintained by the landlord over entrance steps for the common benefit of the premises let and adjoining premises owned by him, or that a gutter later added by the landlord had a tendency to increase accumulation of water at the angle, or that the gutter was in a defective or leaky condition at a still later time when icicles formed at the angle and caused water to drip on the steps which were part of the premises let and upon which a business visitor of the tenant fell, a finding of liability of the landlord for injuries thus caused was not warranted, whether the tenancy began before or at the time when the gutter was constructed.

TORT. Writ in the Superior Court dated February 5, 1935.

A verdict for the defendant was ordered by *Brown,* J., who then reported the case to this court for determination.

*J. J. Krohn,* for the plaintiff.

*J. H. Gilbride,* (*C. R. Flood* with him,) for the defendant.

QUA, J. The plaintiff sues for personal injuries which resulted from slipping upon ice on the steps while he was leaving a house owned by the defendant on Elm Hill Park in Boston.

The house was a two-family residence. One Burg was in occupation of the second floor when the defendant acquired title in 1927 or 1928, and he continued thereafter as a tenant at will of the defendant down to the time of the accident on December 23, 1934. His entrance was No. 23. Another tenant occupied No. 25. The front doors of the

two apartments were near each other, and a small porch in front of the door of No. 23 adjoined a larger piazza which was in front of the door of No. 25. The roofs of the porch and of the piazza came together, forming an angle, and were surrounded by a continuous belt of widely projecting eaves which followed the contour of the roofs. The steps and entrances, however, were entirely separate, the steps where the accident occurred being a part of the premises let to Burg. At some time after the defendant acquired title it constructed a sun parlor upon the roof over the piazza of No. 25 and added a continuous gutter forty to forty-five feet in length around the edge of the eaves over both flights of steps, with a down spout located at the end of the piazza farthest from No. 23.

We assume in the plaintiff's favor that there was evidence sufficient to support findings that the plaintiff was a business visitor to Burg and had the rights of Burg against the defendant; that his injury was caused by ice formed by water dripping upon Burg's steps from "a cluster of icicles" which hung from an angle in the gutter directly over the steps; that the plaintiff was in the exercise of due care; and that the eaves and gutter which ran over the entrances to both apartments were not demised to either tenant, but remained in the possession and control of the defendant for the common benefit of both.

Although the defendant as a landlord owed no duty to the plaintiff to keep the demised steps in good condition, *Conroy* v. *Maxwell*, 248 Mass. 92, 96, upon the foregoing assumptions, it did owe to him the same duty with respect to the eaves and gutter that it would owe with respect to a common passageway which it retained in its control, to wit: the duty to use due care to maintain them in as safe condition as they were in or appeared to be in at the beginning of the tenancy. *Sullivan* v. *Northridge*, 246 Mass. 382. *Kendall* v. *Tashjian*, 258 Mass. 377. *Sordillo* v. *Fradkin*, 282 Mass. 255. We think the evidence insufficient to support a finding of a violation of this duty. If the purchase of the premises by the defendant while Burg was already in occupation is treated as the beginning of the

tenancy, there is nothing to show that icicles would not form in the angle of the eaves and drip upon the steps at that time or that the addition of the gutter had any tendency to cause more water and ice rather than less to accumulate at that point. There was no evidence that the gutter was defectively planned or constructed. A finding that it rendered conditions less safe than before would be based upon conjecture and not upon proof. If the building of the sun parlor and the installation of the gutters are treated as marking the beginning of a new tenancy, there is no evidence that the gutter was in any worse condition or any more likely to become frozen at the time of the accident than when it was installed. The evidence does not show whether it was of wood or of copper or other metal. There is no evidence that it was decayed, corroded or broken in any manner, or that it leaked, or that it was clogged, except as it might be frozen.

The obligation of a landlord to keep common passageways in as good condition as they were in or appeared to be in when the tenancy began does not, in the absence of a special undertaking, extend to the removal of snow or ice naturally accumulating upon them or require the landlord to change their construction so that snow or ice will be less likely to accumulate there. *Woods* v. *Naumkeag Steam Cotton Co.* 134 Mass. 357. *O'Donoughue* v. *Moors*, 208 Mass. 473. *Bell* v. *Siegel*, 242 Mass. 380. *Smolesky* v. *Kotler*, 270 Mass. 32. See *Caruso* v. *Lebowich*, 251 Mass. 477. The landlord is under no greater obligation to remove snow or ice from or to change the construction of roofs remaining in his control, whether or not they are fitted with gutters, and though there may have been no snow or ice upon them at the moment when the tenancy began, provided they are otherwise in no worse condition than they were in or appeared to be in at that time. *Webber* v. *Sherman*, 254 Mass. 402. *Hannaford* v. *Kinne*, 199 Mass. 63. See *London Tobacco Co. Inc.* v. *Freeman*, 280 Mass. 368, 370. Cases in which a pipe or conductor has become an added source of danger through decay or lack of repair are to be distinguished. *Priest* v. *Nichols*, 116 Mass. 401.

*Watkins* v. *Goodall*, 138 Mass. 533. *Hilden* v. *Naylor*, 223 Mass. 290. *Kendall* v. *Tashjian*, 258 Mass. 377. *Devine* v. *Lyman*, 270 Mass. 246. See *MacDonald* v. *Adamian*, 294 Mass. 187, 191.

The testimony of the tenant Burg that at no time before the accident was the gutter defective; that water never leaked from the angle of the gutter onto the steps; and that the gutter was at all times amply sufficient, in both condition and construction, to take care of the flow of water without any dripping onto the steps cannot, even if believed only in part and taken in connection with the evidence of the dripping of water at the time of and shortly before the accident, be construed as evidence that the gutter itself had become defective after its installation and before the accident. The ice on the steps at the time of the accident can be amply accounted for by the freezing of the water in a sound gutter. Even if the gutter never froze until shortly before the accident, that circumstance does not indicate a change in its condition, as there is no evidence when it was installed.

In accordance with the stipulation in the report the entry will be

*Judgment for the defendant on the verdict.*