PHYLLIS SMITH *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.     February 7, 1939. — November 29, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Negligence*, Contributory, In use of way.

Evidence of the circumstances in which a pedestrian, crossing at dusk a grass plot dividing a street, stepped from a place of safety between two sets of street railway tracks onto the further tracks in front of a street car which he knew was approaching nearby and was struck by it required a ruling that he was guilty of contributory negligence.

TORT.     Writ in the Superior Court dated August 27, 1934.

The action was tried before *Walsh*, J.

*J. F. Dunn*, for the plaintiff.

*H. F. Hathaway*, for the defendant.

DOLAN, J.  This is an action of tort to recover compensation for personal injuries sustained by the plaintiff.  The case was tried to a jury and at the close of the plaintiff's evidence the judge allowed the defendant's motion for a directed verdict, and reported the case for the determination of this court upon a stipulation that if his action was right judgment is to be entered on the verdict, and otherwise that judgment is to be entered for the plaintiff in the sum of $3,750.

The evidence in its aspects most favorable to the plaintiff would have warranted the jury in finding the following facts: The accident occurred on June 6, 1934, on Commonwealth Avenue in Boston.  At the locus involved the avenue, which runs, in general, east and west, is divided into two roadways by a grass plot.  The upper or northerly roadway is thirty feet wide, the southerly roadway is fifty feet wide, and the grass plot is ninety-five feet wide.  Near the southerly edge of the grass plot are tracks of the defendant.  On the northerly tracks the defendant's cars outbound from Boston proceed in a westerly direction; on the southerly tracks its cars, inbound to Boston, proceed in an easterly direction.  The distance between the rails of each track is four feet, eight and one half inches; between the tracks is a space called the "dummy" which is eight feet, four inches wide.  From west to east near the point of collision there is an upgrade of about five and one half per cent.

On the night of the accident the plaintiff left the home of her sister who lived at 1667 Commonwealth Avenue, which is located on the upper road at the corner of Colborne Road, to return to her own home 1666 Commonwealth Avenue, which is located at the corner of Cummings Road at its juncture with the avenue on the lower roadway.  The plaintiff's home lay diagonally across the grass plot in a general southeasterly direction from her sister's home.  The time was about 8:30 P.M.  It "was sort of drizzling and just growing dark."  The plaintiff crossed the upper or northerly road without incident.  She then proceeded across the greater part of the grass plot and was within about six

feet of the outbound track when she observed an outbound car on her left which had stopped at a regular stopping place seventy-five feet away. She also observed an inbound car of the defendant coming up the incline at a distance of about one hundred sixty feet. She "made up her mind that she had plenty of time to get across" the two sets of tracks in safety. She crossed the outbound tracks and the "dummy." As she stepped onto the northerly rail of the inbound track, she saw the inbound car at a distance of thirty to forty feet. "It seemed to have slowed a little." Continuing, she reached a position between the rails of the inbound track and then saw the inbound car ten feet from her, gathering speed. She turned to her left, and started to step back toward the "dummy." She took one step, and was struck by the car while still between the rails of the inbound track. The outbound car did not interfere with her progress or contribute in any way to the accident. But from the time the inbound car was thirty to forty feet distant she did not look at it again until it was ten feet away. Meanwhile she had been looking to her left in the direction of the outbound car. The only evidence as to the rate of speed at which the inbound car was proceeding before the plaintiff was struck, except as hereinbefore stated, was given by a witness for the plaintiff who testified that when it was seventy-five feet from the plaintiff it was proceeding at not less than forty miles an hour. On cross-examination he admitted that in a written statement made by him shortly after the accident, he said that the car was going but ten to twelve miles an hour. He finally adopted this latter statement as the truth. See *Sullivan* v. *Boston Elevated Railway*, 224 Mass. 405. The inbound car came to a full stop within a distance of six to ten feet from the point of the collision.

The plaintiff had lived in the vicinity for four years before the accident. There was no physical obstruction on the tracks; there was nothing to interfere with her vision, which was good, as was her hearing. She was alone; her attention was on what she was doing, and she was able to move freely and with agility. Although she "realized" that the

"dummy" was a place of safety, she left the "dummy" and stepped onto the inbound track when the inbound car was only a short distance from her. It was proceeding upgrade between stops when the collision occurred.

In the foregoing circumstances, the most favorable to the plaintiff, we think the jury would not have been warranted in finding for her. She had seen the outbound car and must be taken to have known that upon discharging passengers at the regular stop it would proceed in her direction. Before she left the "dummy" she knew that the inbound car was but forty feet away. Notwithstanding this, she left a place of safety, the "dummy," and stood between the tracks on which the inbound car was approaching. It is apparent that when she was standing in the "dummy" she did not consider the danger of continuing or was careless in proceeding.

It is true that she had the right to rely to some extent upon the expectation that the operator of the inbound car would not operate the car negligently and would exercise reasonable care to avoid injuring her, *Snow* v. *Boston Elevated Railway,* 303 Mass. 420, 423, but she was required nevertheless to exercise reasonable care for her own safety, *Will* v. *Boston Elevated Railway,* 247 Mass. 250, 251, and it is not as if the accident happened in the daytime. It was dusk and there was a drizzling rain and the collision occurred between stops on tracks located not in either roadway but between the upper and lower roadways. The present case is distinguishable from *Scherer* v. *Boston Elevated Railway,* 238 Mass. 367, and *Callahan* v. *Boston Elevated Railway,* 286 Mass. 223. In the first of these cases the plaintiff had nearly reached a place of safety and in the second a single step forward would have taken the plaintiff out of danger. This is rather a case where the plaintiff elected to leave a place of safety and step into a path of danger that should have been apparent to her. The present case is also distinguishable from *Snow* v. *Boston Elevated Railway,* 303 Mass. 420, where the plaintiff reached a position between the tracks where she was injured without previous negligence. The conduct of the plaintiff in the case at bar was as matter of law negligent. *Tobin* v. *Nahant & Lynn Street Railway,* 260 Mass. 512, 514.

*Daignault* v. *Berkshire Street Railway*, 277 Mass. 227. In view of this conclusion it is unnecessary to consider whether the evidence would warrant a finding that the defendant was negligent.

It follows that judgment is to be entered for the defendant on the verdict, in accordance with the stipulation set forth in the report.

*So ordered.*