WILLIAM RUANE *vs.* TIMOTHY DOYLE.

Suffolk.    January 8, 1941. — February 26, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, COX, & RONAN, JJ.

*Landlord and Tenant,* Landlord's liability to tenant, Common stairway. *Evidence,* Conflicting statements of witness.

Evidence warranted a finding that a landlord of a tenement of three stories retained control of a stairway which led from the second to the third floor and was used both by him and by the tenant on that floor, so that he owed that tenant a duty to exercise reasonable care to keep rubber mats that were fastened to the stairway in the condition with respect to safety in which they were or appeared to be when the tenancy began.

The effect of a witness's testimony was for the jury where, on cross examination, he testified that he would say that a previous written statement by him contradictory of his testimony on direct examination "finally, last and for all . . . correctly sets forth the truth," but on redirect examination he again testified substantially as he had on direct examination.

TORT.  Writ in the Superior Court dated March 10, 1938. In the Superior Court, the action was tried before *Giles,* J.

*R. Marks,* for the plaintiff.

*E. R. Langenbach,* (*R. Maguire* with him,) for the defendant.

COX, J.  The plaintiff, as tenant at will, occupied the third story apartment of a three-family house owned by the defendant.  The defendant testified that the front

stairway led to a landing just outside the door of the plaintiff's apartment, and just above this landing there was a skylight in the roof, "which skylight existed for the purpose of throwing light down onto the front stairway." At some time during the plaintiff's tenancy, the defendant repaired this skylight and the roof, and, in order to do so, it was necessary to place ladders and erect a staging on the landing. There was no other way of reaching the roof through the interior. Although that part of the stairway leading from the second to the third floor was a continuation of the front stairway, it was not used by the tenants of the lower apartments. At or about the time when the tenancy began, and during its whole period, all of the treads of the steps were partly covered by rubber mats nailed or screwed to the tops and folded over the edge onto the risers to which they were also nailed or screwed. He further testified that he had control of the exterior of the house and the entrances, and at various times during the plaintiff's tenancy he had made repairs in the house, but not in the hall or stairway area leading from the second floor to the third, and that the tenants on the first and second floors used so much of the stairway as extended to the second floor.

The jury could have found that some weeks prior to the plaintiff's injury he observed that the mat on the top step of the stairway was loose, so that it tended to "buckle" over onto the riser and to slide when stepped upon. About a month before the injury, the plaintiff told the defendant about the condition of the mat, and the latter said that he was going to fix it; that he was going to fix the whole hall and to have the whole of it papered "right down." When the plaintiff came home from work, he observed that the mat was "put back in place; it was pushed over like that (indicating); put back in place, and was nailed down, nailed or screwed." Thereafter the mat again became loose and slid or "buckled" forward over the riser. On one occasion, at least, the defendant "did something about fixing the mat." On the day of the injury, the plaintiff stepped out of his apartment to the landing for the purpose of put-

ting out an electric light. He was barefooted, and as he stepped forward onto the mat, which was just outside the door, the mat slid forward, causing him to fall down the stairway.

At the close of the plaintiff's case, the trial judge allowed the defendant's motion for a directed verdict, subject to the plaintiff's exception, and this presents the only question for decision.

The jury could have found that the defendant retained control of that part of the stairway leading from the second floor to the plaintiff's apartment. It could have been found, as was said in *Nash* v. *Webber*, 204 Mass. 419, that "It was at least intended for the common use of the landlord and the tenant of this tenement." (Page 425.) It has been held that the applicable rule of law should not be limited by nice distinctions, and should apply in case of common stairways used by a few as well as in case of those used by many. *Flanagan* v. *Welch*, 220 Mass. 186, 192. See *Sullivan* v. *Northridge*, 246 Mass. 382; *Cuscuna* v. *Rood*, 289 Mass. 213. The rule applicable in the case at bar is that the defendant owed a duty to the plaintiff to exercise reasonable care to keep that part of the premises remaining in the landlord's control in the condition with respect to safety in which it was, or to a person of ordinary observation would appear to be, at the time of the letting. *Shwartz* v. *Feinberg*, 306 Mass. 331, 333–334, and cases cited. If the plaintiff is to recover, the burden rests upon him of showing a breach of this duty.

The jury could have found that the condition of the mats at the time of the injury constituted a defect, and that this defect did not, or did not appear to, exist at the time the tenancy began. The defendant himself testified that, at the time of the letting, the mats appeared to be in good sound condition and solidly attached to the steps. There was testimony from the plaintiff, the effect of which is hereinafter discussed, that the mat on the step where he fell became loose, so that it tended to "buckle" over onto the riser and to slide when stepped upon. The jury could have found that the defendant was notified of this

condition.　In addition to the evidence that the defendant did something about fixing the mat, there was evidence that, after the plaintiff had told him of its condition and the defendant had said he was going to fix it, when the plaintiff came home from work, he observed what had been done to the mat, as hereinbefore stated.　There was no direct evidence that the defendant, or anyone acting for him, had done what the plaintiff described, but we think it was for the jury to determine what reasonable inference should be drawn from this evidence.　See *Gudziewski* v. *Stemplesky,* 263· Mass. 103, 106; *Rosen* v. *Burnham,* 272 Mass. 583, 586; *Commonwealth* v. *O'Brien,* 305 Mass. 393, 401; *Conley* v. *Morash,* 307 Mass. 430.　If it should be fairly concluded that the mat was replaced by the defendant, or someone acting for him, this would be additional evidence that might be considered on the question whether the defendant retained control of the stairway.　*Readman* v. *Conway,* 126 Mass. 374, 377.　*O'Malley* v. *Twenty-Five Associates,* 170 Mass. 471, 477.　*Maionica* v. *Piscopo,* 217 Mass. 324, 328–329.　Compare *Kearines* v. *Cullen,* 183 Mass. 298, 300.

The defendant contends, however, that the jury was not warranted in finding from the testimony of the plaintiff that the defendant ever did anything to the mats.　It appeared that, a few days after the injury, the plaintiff signed a statement in which he said that the mats were torn and worn when he moved in, and were in the same condition when he moved out; that he complained a number of times to the defendant about them, but that the only satisfaction he got was that the defendant said, "I will do it"; that he never did anything about them and they remained torn; that he made no changes or repairs on the stairs during the tenancy; and that there was no special agreement as to repairs on the stairs or the apartment.　When he was examined as to this statement, his attention was directed to what he had previously testified as to repairs and the condition of the mats, "specifically calling . . . [his] attention" to whether it was not fair to say, "finally, last and for all, that this statement correctly sets forth the

truth as . . . [he] best . . . [could] remember it"; and the plaintiff replied: "I would say so, yes." But upon redirect examination he was asked if there was a difference in the condition of the mat between the time when he moved in and when he was injured, and he replied that "The difference was that it was worn. The mats were there as I said in the statement," and that the difference was also that "These nails were all worn all around this here (indicating); and then the thing had been slipped off several times." From the record it does not appear that the plaintiff was questioned further upon this matter. Where a witness, having made two materially different statements touching the same event, finally adheres definitely to one in preference to the other as being the truth, he is bound by the last statement given as truth. *Sullivan* v. *Boston Elevated Railway*, 224 Mass. 405, 406. In the case at bar, however, the result of the plaintiff's testimony, taken most favorably to the defendant, is that it was conflicting, and it was for the jury to determine to what it amounted. *Keenan* v. *E. M. Loew's, Inc.* 302 Mass. 309, 311, and cases cited. *Dunbar* v. *Ferrera Bros. Inc.* 306 Mass. 90, 93. See *DeCunto* v. *Broadway Savings Bank*, 306 Mass. 119, 120. Compare *Smith* v. *Boston Elevated Railway*, 304 Mass. 422, 424.

The parties have stipulated that "if the case should have been permitted to go to the jury, judgment is to be entered for the plaintiff in the sum of . . . $900 . . .; otherwise, for the defendant." The plaintiff's exception is sustained and, in accordance with the stipulation, judgment is to be entered for the plaintiff.

*So ordered.*