BRIDGET LASKOWSKI *vs.* WILLIAM T. MANNING & another (and a companion case[1]).

Bristol.    October 24, 1949. — March 3, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Snow and Ice. Negligence,* One owning or controlling real estate, Contractual limitation of liability. *Contract,* Of indemnity. *Landlord and Tenant,* Covenant against liability, Sprinkler system, Snow and ice, Landlord's liability to third person, Tenant's liability to third person. *Notice. Practice, Civil,* Exceptions: whether error harmful. *Error,* Whether error harmful.

On evidence, at the trial of an action against the owner of a building, fitted throughout with a sprinkler system for the prevention of fire, for personal injuries sustained by a pedestrian on a way outside the building due to a fall on ice accumulated there from water which had dripped from a defective bell, a part of the system fastened to the outer wall of the building, a finding was warranted that, although all floors of the building were let and the owner was not an occupant of any part of it, he retained control of the system and of the bell.

Provisions in a lease of a portion of a building adjacent to a sidewalk, that the lessee would save the lessor harmless from loss or damage "occasioned by the use or escape of water upon said premises . . . or from any claim or damage arising from neglect in not removing . . . ice . . . from the sidewalks bordering upon the premises so leased . . . ," did not exonerate the lessor from, nor impose on the lessee liability for personal injury sustained by a pedestrian in a fall upon ice accumulated upon such a sidewalk from water dripping from a bell of a sprinkler system which was in the lessor's sole control and was defective because of his negligence.

A notice given under G. L. (Ter. Ed.) c. 84, §§ 18, 19, as amended, and § 21, need not contain a claim of damages or a threat of action, nor state specifically that it is given as or for a statutory notice.

---

[1] The companion case is by the same plaintiff against Citizens Savings Bank.

A ruling in permitting a witness for a bank to state in cross-examination that he performed certain acts "as the maintenance agent for the bank," if error, did not harm the bank where it appeared that full details of the witness's employment were shown by other testimony both by him and by a vice-president of the bank in charge of its real estate.

TWO ACTIONS OF TORT. Writs in the Superior Court dated April 10, 1942.

The actions were tried together before *Hurley*, J. Requests by the defendant Citizens Savings Bank for instructions to the jury, referred to in the opinion, were as follows:

"2. If one of the tenants of the premises bordered by the sidewalk on which the plaintiff fell, had covenanted in a written lease with the defendant to hold it harmless from all loss and damage occasioned by the use or escape of water upon said premises or by the bursting of pipes or from any claim or damage arising from neglect in not removing snow and ice from the sidewalk bordering upon the premises so leased then that tenant has control of the sidewalk upon which the plaintiff fell, and the defendant is not liable."

"5. In the absence of anything to the contrary, the letting of a portion of the premises adjacent to the sidewalk upon which the plaintiff fell includes the outer walls adjacent thereto, and gives the tenant the right to use such walls for the usual purposes ordinarily employed by tenants occupying the premises in the conduct of their business, and the law holds the tenant, and not the owner, liable for injuries received by travellers arising from defects upon the demised portion of the premises.

"6. If the jury should find that at the time of the letting of the premises adjacent to the sidewalk upon which the plaintiff fell, the defendant had no written or oral agreement with the tenants to keep the sprinkler system in repair and this situation continued until the time of the accident, then, as a matter of law, the defendant was not legally obliged to repair the sprinkler bell and, therefore, is not liable."

"8. Where the entire premises were occupied by the tenants other than the defendant, the plaintiff has a burden

of proving that the defendant had a legal obligation to repair the sprinkler system and in the absence of such proof the plaintiff cannot recover."

"10. The covenant in the lease between the Mannings and the Citizens Savings Bank containing the covenant of the Mannings in favor of the Citizens Savings Bank to hold the latter harmless from all loss and damage occasioned by the use or escape of water upon said premises or by the bursting of pipes or from any claim or damage arising from neglect in not removing snow and ice from the roof of the building or from the sidewalks bordering upon the premises so leased, or by any nuisance made or suffered to be made by the Mannings on the premises over which they have control, or which it is within their ability and power to prevent and eliminate, is in effect a covenant by the Mannings to see that water was not discharged from the sprinkler bell to the sidewalk creating a nuisance by afterwards freezing.

"11. There is no rule of general application that a person cannot contract for exemption from liability for his own negligence and that of his agents and servants, and if the jury should find the defendant was negligent in allowing water to be discharged from the sprinkler bell to the sidewalk and afterwards freezing thereon, then the jury must find because of the covenant to hold harmless from any claim or damage arising from neglect in not removing the ice, that the responsibility for the removal was solely that of the Mannings who are primarily liable and the law looks no further back."

*W. J. Fenton*, (*F. M. Silvia, Jr.*, with him,) for the defendants Manning.

*F. D. Mone*, for the defendant Citizens Savings Bank, submitted a brief.

*W. A. Torphy*, for the plaintiff, submitted a brief.

WILKINS, J. The plaintiff, on February 5, 1942, was hurt in a fall on ice on the sidewalk on Anawan Street near the corner of Union Street, Fall River, and brings these two actions of tort, one against the lessees (hereinafter called the Mannings) of a portion of a building adjacent to the

sidewalk and the other against the bank, the owner. There were verdicts for the plaintiff. Near the point of fall there was a doorway leading to a ramp which was included in the premises leased by the bank to the Mannings under a written instrument dated May 28, 1937. Above the doorway on the outside wall of the second floor of the building adjacent to premises of which one Cherry and Webb Company was the occupant, there was a bell which was part of a sprinkler system for the prevention of fire.

In answer to special questions the jury found that (1) the ice upon which the plaintiff fell was caused to form by water flowing from a defective sprinkler bell, or that part of the sprinkler system to which the bell was attached, and freezing upon the sidewalk as the result of natural causes; (2) the bank retained control of the sprinkler system, including the bell; (3) the defective condition of the bell or the sprinkler system existed as a result (a) of the negligence of the bank but (b) not of the Mannings; and (4) the snow or ice accumulated as the result of the neglect of the Mannings in not removing it.

The defendants excepted to the denial of their motions for directed verdicts and of their motions to enter verdicts in their favor under leave reserved. There was evidence that the ice, which was concealed by a recent light fall of snow, had remained there for two or three days; that it was the only ice in the vicinity and extended from a point directly below the fire alarm bell across the sidewalk to the curbstone; that on two previous occasions water had leaked from the sprinkler system into the bell, thence down the side of the building and across the sidewalk; and that both defendants knew or ought to have known of these leaks, which later were ascertained to be due to a defective valve in back of the bell which allowed water to escape.

Apart from questions arising out of an agreement on the part of some tenant to keep the sidewalk free from ice thus caused, the bank would be liable. It owned the building, and the leaking sprinkler system was, or could have been found to be, a source of danger to travellers upon the high-

way. *Cavanagh* v. *Block*, 192 Mass. 63, 65. *Woodman* v. *Shepard*, 238 Mass. 196, 199. See *Donahue* v. *M. O'Keefe, Inc.* 255 Mass. 35, 39; *Roland* v. *Kilroy*, 282 Mass. 87, 92; *Bullard* v. *Mattoon*, 297 Mass. 182; *Tomasunas* v. *Khoury*, 314 Mass. 754; *Hooper* v. *Kennedy*, 320 Mass. 576.

· The lease from the bank to the Mannings contained the following: "Said lessees . . . will save the lessor harmless from all loss and damage occasioned by the use or escape of water upon said premises or by the bursting of pipes or from any claim or damage arising from neglect in not removing snow and ice from the roof of the building or from the sidewalks bordering upon the premises so leased, or by any nuisance made or suffered to be made by the lessees on the premises over which they have control, or which is within their ability and power to prevent and eliminate . . .; and will hold the lessor harmless and indemnified against any injury, loss or damage to any person or property on said premises." The Mannings would be liable if the plaintiff's injuries were caused by neglect to perform their obligations under the lease. *Wixon* v. *Bruce*, 187 Mass. 232. *Coman* v. *Alles*, 198 Mass. 99, 103. *Cerchione* v. *Hunnewell*, 215 Mass. 588. *Brazinskos* v. *A. S. Fawcett, Inc.* 318 Mass. 263, 266–267. See *Leydecker* v. *Brintnall*, 158 Mass. 292, 297. But this would not prevent the bank also from being liable to the plaintiff if the bank could have been found to have retained control of the sprinkler system and bell. *Follins* v. *Dill*, 221 Mass. 93, 98. *Donahue* v. *M. O'Keefe, Inc.* 255 Mass. 35, 39. *Clarke* v. *Ames*, 267 Mass. 44, 46–47. See *Gilroy* v. *Badger*, 301 Mass. 494, 496; *Nichols* v. *Donahoe*, 309 Mass. 241, 242.

There was ample evidence from which the bank could have been found to have retained such control. *Marston* v. *Phipps*, 209 Mass. 552, 555. *Hilden* v. *Naylor*, 223 Mass. 290, 292–293. *Conroy* v. *Maxwell*, 248 Mass. 92, 97. *Sordillo* v. *Fradkin*, 282 Mass. 255. *MacDonald* v. *Adamian*, 294 Mass. 187, 191. Of such evidence we need mention only that the sprinkler system ran throughout the building and was designed to protect the entire edifice from fire. It

could have been found that the bank procured and paid for all the repairs to the sprinkler system that were made (*Marston* v. *Phipps*, 209 Mass. 552, 555), while there was nothing connecting any tenant with responsibility for its operation. Besides the Mannings, other tenants were the Anawan Garage and the Central Sign Company. Whether the Cherry and Webb Company was a subtenant of the Anawan Garage was an unimportant minor issue, and the bank was not harmed by the exclusion of evidence it offered apparently to prove that fact. It appeared that the bank was not an occupant of any part of the building, and that all the floors were leased to others. The excluded evidence had no greater tendency to show that the bank had given up control of the sprinkler system.

Enough has been said to show that there was no error in the denial of the bank's requests for instructions numbered 5 and 6, which were at variance with the principles herein expressed as to the retention of control by the bank. The same is true of the exception to that part of the charge in which the judge said that if the jury found that the bank retained control of the sprinkler system, it was conceivable that they might find for the plaintiff against the bank. The exception to the portion of the charge relating to the third question submitted to the jury does not merit discussion.

There likewise was no error in the denial of the bank's motions or in the refusal of its requests for instructions numbered 2, 10, and 11, which were based upon a supposed exoneration of the bank in the covenants by the Mannings in the lease.

We are confirmed in this conclusion by a consideration of those covenants. The Mannings contend, and we think rightly, that the indemnity provision should not be construed to cover the removal from the sidewalk of ice forming as the result of the bank's negligence. In *Boston & Maine Railroad* v. *T. Stuart & Son Co.* 236 Mass. 98, 104, it was said, "A contract of the nature here involved will not be considered as indemnifying one against his own negligence, or that of his employees, unless its express language

requires it. Such an intent must unequivocally appear, and words of general import are not sufficient. It is not to be assumed in the absence of clear stipulation that a contract is to be construed as creating a result so far reaching, and involving consequences which may be so hazardous and momentous." *New York Central & Hudson River Railroad v. T. Stuart & Son Co.* 260 Mass. 242, 249–250. *Farrell v. Eastern Bridge & Structural Co.* 291 Mass. 323. See *Ortolano v. U-Dryvit Auto Rental Co. Inc.* 296 Mass. 439; *American Sandpaper Co.* v. *Waltham Factories, Inc.* 299 Mass. 369. See also *Gast* v. *Goldenberg*, 281 Mass. 214. This is not a case where it is necessary, in order to give effect to the lessee's undertaking, to construe his promise as comprehending an indemnity against the lessor's negligent acts as to a part of the property in the lessor's control, and we do not accept that construction. See now G. L. (Ter. Ed.) c. 186, § 15, as inserted by St. 1945, c. 445, § 1.

The verdict against the Mannings was based entirely on neglect to remove the ice, which formed entirely because of the negligence of the bank. There was no other evidence of negligence on their part. We are of opinion that the motions for a verdict in their favor should have been granted.

The bank also excepted to the following portion of the charge: "Something was said about a water pipe bursting in the basement of the property occupied by Manning and being repaired by Mr. Clark; and the bank paid the bill, it was said, because it serviced the entire building. You have a right to consider that evidence. You have a right to consider the fact that when the fire underwriters came there in the summer preceding this accident and required the renewing of sprinkler heads in order to conform with the conditions of the fire insurance policies on the building . . . Mr. Clark went down and did that and sent the bill to the bank." There was no error. In the first place, the evidence referred to, having been admitted without objection, was in the cases for whatever effect it might have to prove any matter in issue. *Jackson* v. *Colonial Provision Co. Inc.* 314

Mass. 177, 179–180. *Ventromile* v. *Malden Electric Co.* 317 Mass. 132, 135. *Eastern Paper & Box Co. Inc.* v. *Herz Manuf. Corp.* 323 Mass. 138, 143. Furthermore, where there was an issue as to control of premises, the acts of control of the bank were admissible. *Readman* v. *Conway,* 126 Mass. 374, 377. *Poor* v. *Sears,* 154 Mass. 539, 548–549. *O'Malley* v. *Twenty-Five Associates,* 170 Mass. 471, 477. *Baum* v. *Ahlborn,* 210 Mass. 336, 337. *Maionica* v. *Piscopo,* 217 Mass. 324, 329. *Gallagher* v. *Murphy,* 221 Mass. 363, 365–366. *Crudo* v. *Milton,* 233 Mass. 229, 231. *Ruane* v. *Doyle,* 308 Mass. 418, 421. Wigmore, Evidence (3d ed.) § 283. Cases where there was no conflicting evidence as to control are to be distinguished. *McKeon* v. *Cutter,* 156 Mass. 296, 298. *Kearines* v. *Cullen,* 183 Mass. 298, 301. *Shepard* v. *Worcester County Institution for Savings,* 304 Mass. 220, 222–223.

The bank's eighth request relating to the burden of proof was given in substance.

There is no merit in the bank's exception to the admission in evidence of the notice[1] given to the bank under G. L. (Ter. Ed.) c. 84, §§ 18, 19, as amended, and § 21. The notice gave the plaintiff's name and address with street and number and the time, place, and cause of her injury. It was signed on her behalf by her attorneys, and was given five days after the accident. Its substance was a sufficient compliance with the statute to lay a foundation for her claim. It was not necessary that the notice contain a claim of damages or threat of action. *Goff* v. *Hickson,* 322 Mass. 655, 658–659. It did not have to say in so many words that it was given as and for a statutory notice. See *Meniz* v. *Quissett Mill,* 216 Mass. 552, 556.

During the cross-examination by counsel for the Man-

---

[1] The body of the notice, which was dated February 10, 1942, and addressed to the bank, was as follows: "Due to the defective condition of the premises at 338 Anawan Street, Fall River, Bridget Laskowski, 7 Washington Street, Fall River, was seriously injured on February 5, 1942, at approximately 9:45 A.M. The said injury was caused by the accumulation of ice on the sidewalk in front of said 338 Anawan Street and said ice accumulated due to water leaking from a bell attached to said building and which bell was in a defective condition."

nings of one Clark, called as a witness by the plaintiff, the witness testified without objection that he knew that the pipes connecting the bell with the sprinkler system were disconnected after the accident at his direction. The witness was then asked, "You did it as the maintenance agent for the bank?" Subject to the bank's exception, he answered, "Yes." In any event, the bank was not harmed by this answer, as full details of Clark's employment appeared in other testimony both by him and by a vice-president of the bank in charge of its real estate. The substantial rights of the bank were not affected. G. L. (Ter. Ed.) c. 231, § 132.

In the action against the Mannings the exceptions are sustained, and judgment is to be entered for the defendants. In the action against Citizens Savings Bank the exceptions are overruled.

*So ordered.*